UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


MED-CERT HOME CARE, LLC,   )
            )
   Plaintiff,    )
            )   CIVIL ACTION NO.
VS.         )
            )   3:18-CV-2372-G
ALEX M. AZAR, II, ET AL.,   )
            )
   Defendants.   )


## MEMORANDUM OPINION AND ORDER

  Before the court is the plaintiff's motion for a preliminary injunction (docket entries 6, 26).  For the reasons stated below, the motion is granted.

## I. INTRODUCTION

  This is a dispute between a recipient of Medicare payments and the government entity in charge of distributing Medicare payments and reviewing the claims of recipients who have received Medicare payments.  Some background is necessary to explain the motion currently before the court.  On September 7, 2018, the plaintiff Med-Cert Home Care, L.L.C. ("Med-Cert") filed its complaint.  *See* Complaint (docket entry 1).  Three days later, on September 10, Med-Cert filed an

emergency motion for a temporary restraining order, in which Med-Cert sought to enjoin the defendants Alex M. Azar, II, Secretary of the United States Department of Health and Human Services, and Seema Verma, Administrator for the Centers for Medicare and Medicaid Services ("CMS"), from withholding reimbursement of Med-Cert's Medicare claims. Emergency Motion for Temporary Restraining Order at 1-3 (docket entry 6). The court held a hearing on Med-Cert's motion for temporary restraining order on September 19, 2018. Order Regarding Emergency Motion for Temporary Restraining Order (docket entry 9); Electronic Minute Entry for Motion Hearing (docket entry 14).

On the same date, the court issued two orders. First, the court issued an order denying Med-Cert's motion for a temporary restraining order. Order Denying Motion for Temporary Restraining Order (docket entry 15). Second, the court issued an order setting a briefing schedule on plaintiff's motion for a preliminary injunction. Order (docket entry 13). Both parties have submitted their proposed findings of fact and conclusions of law; Med-Cert's motion for preliminary injunction is thus ripe for decision. *See* Plaintiff's Proposed Findings of Fact and Conclusions of Law ("Findings") (docket entry 18); Response (docket entry 19); Reply (docket entry 25). In accordance with Federal Rule of Civil Procedure 52, the court sets forth its findings of fact and conclusions of law below.

## II.  FINDINGS OF FACT

Med-Cert has operated as a licensed Medicare certified agency since 2011 with no condition level deficiency.[1]  Appendix to Defendants' Proposed Findings of Fact and Conclusions of Law, Declaration of Jacquelyn W. Smith ("Smith Declaration") at 9-10 ¶¶ 5, 7 (docket entry 20).

Med-Cert furnishes unique services to an aging population from South East Asia who have special needs because of language and cultural differences in addition to exposure to Agent Orange.  Exhibit K of Plaintiff's Additional Attachments at 3 (docket entry 4).

On March 2, 2017, a CMS Zone Program Integrity Contractor ("ZPIC") completed a post-payment audit of a random sample of Medicare Part A payments to Med-Cert.  Exhibit D of Plaintiff's Additional Attachments at 7 (docket entry 4). The ZPIC concluded that Med-Cert was overpaid on 97.8% of the reviewed claims, as the claims did not meet the necessary Medicare requirements for the type of services provided.  *Id*. at 9-10.  Of the 46 claims reviewed, the ZPIC determined that

---

[1]       Condition level deficiency, or condition level noncompliance, is a more serious type of noncompliance with the requirements of an approved Medicare accrediting organization.  Smith Declaration at 9-10 ¶¶ 6-7.  These standards are at least as stringent as the Medicare Conditions of Participation.  *Id*. at 9-10 ¶ 6.  If an accrediting organization finds a condition level deficiency, it must report the issue to CMS.  *Id*. at 10 ¶ 7.  No such deficiency by Med-Cert was reported to CMS for any of the three evaluation surveys completed of Med-Cert by its accrediting organization.  *Id*.

45 claims failed to fully meet the requirement for face-to-face physician evaluation of the patient to confirm homebound status and need for skilled nursing services. *Id*. The ZPIC also found that some claims failed to provide physician orders for the services or to provide appropriate documentation to support the services billed. *Id*. The overpayment rate for the audited claims was extrapolated to all Med-Cert Medicare claims with process dates between February 5, 2015 and September 3, 2016, resulting in an extrapolated overpayment of $1,787,063.39. *Id*. at 3-4.

Med-Cert appealed the ZPIC's overpayment determination to the first level of the Medicare administrative appeals process, 42 C.F.R. § 405.904(a)(2), requesting a redetermination from the Medicare Administrative Contractor ("MAC") on April 26, 2017. Exhibit F of Plaintiff's Additional Attachments at 1 (docket entry 4). For the redetermination, Med-Cert submitted 12,824 pages of clinical files. *Id*. at 1-2. Med-Cert also submitted an expert opinion and curriculum vitae for Dr. Carlton Smith, an outside physician who reviewed Med-Cert's claims; the curriculum vitae of the Med-Cert Administrator and Director of Nursing; a 2014 letter from the CMS Administrator regarding a draft report from the Health and Human Services' ("HHS") Office of Inspector General on home health providers' compliance with documentation requirements for Medicare claims; a Wikipedia article on the effects of Agent Orange; and several certifications and awards received by Med-Cert for quality services. *Id*. at 10-46. After conducting a new and independent review of the

claims at issue, on June 28, 2017 the MAC notified Med-Cert that it had completed the redetermination, which upheld the ZPIC's overpayment determination. Exhibit G of Plaintiff's Additional Attachments at 1 (docket entry 4).

On August 15, 2017, Med-Cert appealed the MAC's decision, submitting a request for reconsideration from a Qualified Independent Contractor ("QIC")—a separate CMS contractor— in accordance with 42 C.F.R. § 405.904(a)(2). Exhibit H of Plaintiff's Additional Attachments at 1-6 (docket entry 4). On November 9, 2017, the QIC issued the reconsideration, again upholding the original overpayment determination. Exhibit J of Plaintiff's Additional Attachments at 1-48 (docket entry 4). As part of its review, the QIC evaluated Med-Cert's extensive case file, including the patient clinical files, Med-Cert's expert report, a nurse summary from Med-Cert's Administrator and Director of Nursing, documentation from both the MAC and ZPIC, and extrapolations/statistical sampling documentation. *Id*. at 3-4.

In its letter notifying Med-Cert of the decision, the QIC informed Med-Cert that it had the right to appeal the determination to an Administrative Law Judge ("ALJ"). *Id*. at 1. The letter also stated that "recoupment [of the overpayment] will begin 31 days from the date of this letter in the absence of an acceptable request for an extended repayment schedule." *Id*.

On December 28, 2017 Med-Cert timely filed its ALJ appeal. Exhibit K of Plaintiff's Additional Documents at 1-22 (docket entry 4). As part of its appeal, Med-Cert included the same documents it had previously submitted to the MAC and QIC as part of its requests for redetermination and reconsideration. *Id*. at 22. Med-Cert did not submit any new documentary evidence and its arguments in the appeal addressed Med-Cert's concerns that the prior reviews did not properly evaluate the documentation in the clinical files, which it had previously submitted in the case record. *Id*. at 1-22. Med-Cert's appeal identified only one testifying expert witness, Dr. Carlton Smith, whose written opinion was submitted to the MAC as part of the request for redetermination, and whose detailed comments were provided as part of each of Med-Cert's three appeals requests. Exhibit F of Plaintiff's Additional Documents at 3-4; 14-23; Exhibit H of Plaintiff's Additional Documents at 1-2; Exhibit K of Plaintiff's Additional Documents at 12-18. Dr. Carlton Smith's expert opinion was specifically considered by the QIC as part of the reconsideration. Exhibit J of Plaintiff's Additional Documents at 1-48 (docket entry 4).

Within 90 days of filing an appeal to the ALJ, 42 U.S.C. § 1395ff(d)(1)(A) requires the ALJ to hold a hearing and issue a decision on the appellant's claim. Currently, there is a delay at the ALJ Medicare administrative level. Courts within this circuit have found it may take three to five years for a Medicare appeal pending before an ALJ to be heard. *Family Rehabilitation, Inc. v. Azar*, No. 3:17-CV-3008,

2018 WL 3155911, at *6 (N.D. Tex. June 28, 2018) (Kinkeade, J.)  More recent statistics from the Office of Medicare Hearings and Appeals ("OMHA") show that the average processing time for appeals filed in the first quarter of fiscal year 2018—when Med-Cert filed its request for an ALJ hearing—is 1,214 days, or 3.3 years.  Appendix to Defendants' Proposed Findings of Fact and Conclusions of Law, Declaration of Norris Cochran, Exhibit 1 at 7 (docket entry 20).  As of June 30, 2018, the average wait time for a decision to be reached at the ALJ level is 1,142 days. Appendix to Defendants' Proposed Findings of Fact and Conclusions of Law, Declaration of Norris Cochran at 4 ¶ 5.  Furthermore, the United States District Court for the District of Columbia recently entered a mandamus order on November 1, 2018, requiring the government to reduce the backlog of appeals by the end of fiscal year 2022.  *American Hospital Association v. Azar*, No. 14-851-JEB, 2018 WL 5723141, at *3-*4 (D. D.C. Nov. 1, 2018).

Additionally, Congress anticipated that ALJ hearings and decisions might not always occur within 90 days, and thus wrote into the statute an option by which a provider may escalate its appeal past the ALJ review stage to the fourth level of the administrative appeals process—the Medicare Appeals Council—ensuring that the appeal is not held up pending the ALJ decision. 42 U.S.C. § 1395ff(d)(3)(A); *accord* 42 C.F.R. § 405.1016.  Upon escalation, the Council may hold any additional proceedings, including a hearing, which it deems necessary to issue a decision on the

appeal. 42 C.F.R. § 405.1108(d)(2). The Council must render a decision or remand the case within 180 days of a timely review request. 42 C.F.R. § 405.1100(d). If the Medicare Appeals Council does not render a timely decision, the appealing party may seek judicial review in federal district court. 42 U.S.C. § 1395ff(d)(3)(B).

Since Med-Cert filed its ALJ appeal, no appeal decision, hearing, or notice of the same has occurred. Complaint at 17 ¶ 59 (docket entry 1).

Med-Cert derives the vast majority of its net revenue (90% plus) from services provided to Medicare beneficiaries and paid for by the federal Medicare program. Affidavit of Mathew John at 2 ¶ 4 (docket entry 18). If CMS allowed to recoup Med-Cert's Medicare payments during the two-to-four-year pendency of Med-Cert's ALJ appeal, Med-Cert will not have the income to sustain itself. *Id.* at 2 ¶¶ 5, 8.

Before the recoupment, Med-Cert employed 18 staff members. Affidavit of Mathew John at 3 ¶ 9. Currently Med-Cert employs two staff members. *Id.* If CMS is allowed to continue with recoupment Med-Cert will have to terminate the employment of its remaining two employees. *Id.*

Med-Cert cannot pay the approximate $33,000.00 per month that a CMS payment plan would arrange. Affidavit of Mathew John at 3-4 ¶ 15 (docket entry 18); Transcript of Motion for Temporary Restraining Order Before the Honorable A. Joe Fish ("Transcript") at 4:7-4:18.

The outcome of Med-Cert's appeal before the ALJ is unclear. Med-Cert alleges that it has more than a substantial likelihood of success on its ALJ appeal because it "did everything correctly, per CMS guidelines." Reply at 6 ¶ 10. Nevertheless, statistics from the OMHA show that of the appeals decided in the first three quarters of Fiscal Year 2018 only 17.2% were fully favorable to the appealing party, whereas 1% were partially favorable, 20.5% were unfavorable to the appealing party, and 61.3% of the appeals were dismissed. Appendix to Defendants' Proposed Findings of Fact and Conclusions of Law, Declaration of Jason M. Green at 13 ¶ 5 (docket entry 20).

If Med-Cert does not keep at least one patient on service during the pendency of the ALJ appeal, Med-Cert will lose its Medicare provider number. Affidavit of Susan Mathew at 4 ¶ 8.

## III. CONCLUSIONS OF LAW

Med-Cert seeks to enjoin the defendants from recouping overpayments allegedly made to Med-Cert by withholding reimbursement of Med-Cert's current and future Medicare claims. *See* Plaintiff's Proposed Findings of Fact and Conclusions of Law. "The purpose of a preliminary injunction is to preserve the status quo and thus prevent irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits." *Exhibitors Poster Exchange, Inc. v. National Screen Service Corp.*, 441 F.2d 560, 561 (5th Cir. 1971). The decision to

grant or deny preliminary injunctive relief is left to the sound discretion of the

district court. *Mississippi Power & Light Company v. United Gas Pipe Line Company*, 760

F.2d 618, 621 (5th Cir. 1985). To obtain a preliminary injunction, a plaintiff must

show the following: (1) there is a substantial likelihood of success on the merits; (2)

there is a substantial threat that the plaintiff will suffer irreparable injury if the

injunction is denied; (3) the threatened injury outweighs any damage that the

injunction might cause the defendant; and (4) granting the injunction will not

disserve the public interest. *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 265 (5th

Cir. 1999).

"None of the four requirements has a fixed quantitative value." *Family

Rehabilitation, Inc.*, 2018 WL 3155911, at *3 (quoting *Monumental Task Committee, Inc.

v. Foxx*, 157 F. Supp. 3d 573, 582 (E.D. La. 2016)). "Therefore, in applying the four

part test, 'a sliding scale is utilized, which takes into account the intensity of each in

a given calculus.'" *Id*. (quoting *DeFranceschi v. Seterus, Inc.*, No. 4:15-CV-870-O, 2016

WL 6496323, at *2 (N.D. Tex. Aug. 2, 2016) (O'Connor, J.)). "This requires 'a

delicate balancing of the probabilities of ultimate success at final hearing with the

consequences of immediate irreparable injury that possibly could flow from the denial

of preliminary relief.'" *Id*. (quoting *Monumental Task Committee, Inc.*, 157 F. Supp. 3d

at 582). "When the other factors weigh strongly in favor of an injunction, 'a showing

of some likelihood of success on the merits will justify temporary injunctive relief.'"

*DeFranceschi*, 2016 WL 6496323, at *2 (quoting *Monumental Task Committee, Inc.*, 157 F. Supp. 3d at 585).

A. <u>Likelihood of Success</u>

When determining the likelihood of success on the merits, the court looks to the standards of the substantive law. *See Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990). To obtain an injunction, the movant's likelihood of success must be more than negligible, *Compact Van Equipment Company, Inc. v. Leggett & Platt, Inc.*, 566 F. 2d 952, 954 (5th Cir. 1978), and the preliminary injunction should not be granted unless the question presented by the litigant is free from doubt. *Congress of Racial Equality v. Douglas*, 318 F.2d 95, 97 (5th Cir.), *cert. denied*, 375 U.S. 829 (1963).

As noted above, Med-Cert seeks to enjoin the defendants from recouping overpayments allegedly made to Med-Cert by withholding reimbursement of Med-Cert's current and future Medicare claims. Based on Med-Cert's Proposed Findings of Fact and Conclusions of Law, this court surmises that Med-Cert bases its motion for preliminary injunction on its procedural due process claim.[2] "Procedural due

_____

[2] In its original complaint, Med-Cert asserted four claims: (1) a procedural due process claim; (2) an ultra vires claim; (3) a claim brought under Section 704 of the Administrative Procedure Act; and (4) a claim for mandamus relief. *See* Complaint at 22-26. Med-Cert did not discuss the likelihood of success it would have before this court on each claim in its Proposed Findings of Fact and Conclusions of Law, however. *See* Plaintiff's Proposed Findings of Fact and Conclusions of Law. Rather, Med-Cert mentioned only two of its claims—the procedural due process claim and the ultra vires claim. *Id*. at 6 ¶ 16. And, of these

(continued...)

- 11 -

process protects against governmental deprivation of a liberty or property interest."

*Family Rehabilitation, Inc.*, 2018 WL 3155911 at *4 (citing *Matthews v. Eldridge,* 424

U.S. 319, 332 (1976)).  When analyzing whether a party's procedural due process

rights have been violated, courts weigh three factors:

> First, the private interest that will be affected by the
> official action; second, the risk of an erroneous deprivation
> of such interest through the procedures used, and the
> probable value, if any, of additional or substitute
> procedural safeguards; and finally, the Government's
> interest, including the function involved and the fiscal
> administrative burdens that the additional or substitute
> procedural requirement would entail.

*Eldridge*, 424 U.S. at 335.  Furthermore, because Med-Cert seeks to prevent

recoupment until the ALJ hearing takes place, as the Fifth Circuit recently explained,

to show a likelihood of success on the merits "would require showing that [this]

procedure[] [is] required before recoupment—rather than showing that the outcome

of [the] procedure[] will likely be favorable in a specific case."  *Family Rehabilitation,*

*Inc. v. Azar*, 886 F.3d 496, 504 n. 14 (5th Cir. 2018) (citing *Eldridge*, 424 U.S. at

335).

---

[2](...continued)
two claims, Med-Cert only indicated that it would likely be successful before this
court on its procedural due process claim.  *Id*. at 7-8, 11-12.  Accordingly, the court
finds that Med-Cert did not carry its burden of persuasion with respect to its ultra
vires claim, its Administrative Procedure Act claim, and its claim for mandamus relief.
Therefore, the court will neither discuss Med-Cert's likelihood of success on these
claims nor consider them to be a basis for Med-Cert's motion for injunctive relief.

Here, Med-Cert does not argue that the statutory appeals process does not provide adequate due process. *See generally* Plaintiff's Proposed Findings of Facts and Conclusions of Law. Instead Med-Cert alleges that its procedural due process has been violated by CMS' failure to comply with the statutorily mandated procedure to hold an ALJ hearing within 90 days of filing. *Id*. at 7-8. Specifically, Med-Cert asserts that it has a property interest in Medicare payments for services rendered, which are now being withheld by CMS to recoup Med-Cert's alleged overpayment. *Id*. at 8 ¶ 20. Med-Cert further argues that there is a high risk of an erroneous deprivation of Med-Cert's property interest under the current appeals process since, due to the backlog of Medicare appeals before ALJs, Med-Cert will go out of business before receiving the procedural due process statutorily provided by way of an ALJ appeal. *Id*. Finally, Med-Cert asserts that the escalation process through which Med-Cert can escalate its appeal to the Medicare Appeals Council—or even possibly a federal district court—is inadequate and fails to provide appropriate procedural due process. *Id*. at 8 ¶ 21.

In response, the defendants argue that Med-Cert has no valid property interest at risk of erroneous deprivation because Med-Cert cannot claim a property interest in the recoupment of an overpayment determination. Response at 18 ¶ 20. The defendants also assert that even if Med-Cert possesses a valid property interest, Med-Cert "faces a low risk of erroneous deprivation of this property interest, as it can

escalate its appeal and receive the protections of Article III review." *Id*. at 20 ¶ 20. The defendants argue that escalation provides adequate procedural due process for a number of reasons. First, the defendants assert that the Medicare Appeals Council may conduct a hearing if necessary. *Id*. at 16 ¶ 18. Additionally, the defendants assert that escalation will provide adequate procedural due process since the Medicare Appeals Council's review will be based on the existing record presented to the QIC, which is the same record used by the ALJ. *Id*. at 20 ¶ 21. Moreover, the defendants argue, Med-Cert has failed to submit sufficient information to substantiate its claim that it will go out of business before the ALJ hears its appeal. *Id*. at 19 ¶ 20.

Following the framework laid out in *Eldridge* and *Family Rehabilitation, Inc*., this court must first determine whether Med-Cert has a valid "private interest that will be affected by the official action." *Eldridge*, 424 U.S. at 335. As mentioned above, the defendants allege that Med-Cert has no valid property interest because Med-Cert cannot claim an interest in retaining Medicare overpayments. Response at 18-20 ¶ 20. Although the court agrees with the defendants' argument that precedent establishes that a healthcare provider cannot claim a property interest in Medicare payments to which it is not entitled, see e.g. *Smith v. North Louisiana Medical Review Association*, 735 F.2d 168, 173 (5th Cir. 1984); *Sahara Health Care, Inc. v. Azar*, No. 7:18-CV-203, 2018 WL 6073564, at *13 (S.D. Tex. Nov. 1, 2018), the court

disagrees with the defendants' characterization of Med-Cert's claimed property interest.

Here, Med-Cert does not claim a property interest in the alleged overpayments. Med-Cert claims an interest in the Medicare payments for properly billed claims that are now being recouped by the government. Precedent makes clear that Med-Cert has a valid property interest in receiving Medicare payments for services rendered.[3] See *Adams EMS, Inc. v. Azar*, No. H-18-1443, 2018 WL 5264244, at *10 (S.D. Tex. Oct. 23, 2018) (finding that the plaintiff, a healthcare provider whose Medicare payments for services rendered were being withheld as recoupment for alleged overpayments, had "a property interest in receiving and retaining the Medicare payments it has earned."); *Family Rehabilitation, Inc.*, 2018 WL 3155911 at *4 (concluding that the plaintiff, a Medicare-certified home health agency whose Medicare payments were being withheld as recoupment for alleged overpayments, had "a property interest in the Medicare payments for services

---

[3] This court recognizes that the court in *Sahara Health Care, Inc.* viewed the fact that the plaintiff was being deprived of payments properly billed as the plaintiff "returning monies to which it was never entitled." *Sahara Health Care, Inc.*, 2018 WL 6073564 at *17. This court does not take the same view. Although the government may recoup overpayments from a health provider's Medicare payments, 42 C.F.R. § 405.371(a), because Med-Cert's appeal of the overpayment determination is not final, this court cannot definitely state that withholding Med-Cert's payments for properly billed claims is the same as Med-Cert returning money to which it was "never entitled." Med-Cert may prevail on its appeal, thereby entitling Med-Cert to the funds recouped with interest. 42 U.S.C. § 1395ddd(f)(2)(B).

rendered."); see also *Infinity Healthcare Services, Inc. v. Azar*, No. H-18-1626, 2018 WL 6072651, at *6 (S.D. Tex. Nov. 19, 2018) (concluding that the plaintiff, a provider of home health services, had a property interest in the Medicare payments for services rendered).

Having found Med-Cert has a property interest, the court must move to the second *Eldridge* factor and determine whether there is a high risk of an erroneous deprivation of Med-Cert's property interest due to the backlog of cases before the ALJs. See *Eldridge*, 424 U.S. at 335. The court finds Judge Kinkeade's opinion in *Family Rehabilitation, Inc.* particularly enlightening on this issue.

In *Family Rehabilitation, Inc.* the plaintiff, a home health provider, brought suit against CMS seeking to enjoin the government from recouping its Medicare payments until the plaintiff received an ALJ hearing. *Family Rehabilitation Inc.*, 2018 WL 3155911 at *1. According to the plaintiff's filings, the plaintiff relied on Medicare reimbursements for approximately 94% of its revenue stream. *Id.* at *5. Furthermore, after recoupment of the plaintiff's alleged overpayments began, the plaintiff had to lay off 89% of its staff and terminate the healthcare services for a majority of its patients in order to subsist off a small fraction of its usual revenue. *Id.* at *3, *5.

After laying out these facts, Judge Kinkeade observed that while "[a] healthcare agency may be able to float its expenses and survive for the statutorily

imposed 90-day period for an ALJ to hear and decide the appeal even while its alleged overpayments are in recoupment . . . . it is unreasonable to expect a healthcare agency to scrape by for three to five years waiting for a hearing and decision while CMS recoups the alleged overpayments." *Id*. at *5. Moreover, Judge Kinkeade determined that "[w]hile the statute allows CMS to begin recouping the alleged overpayments before the ALJ renders a decision, Congress likely did not anticipate that decision being delayed much longer than the statutorily prescribed 90 days and certainly not a delay of three to five years." *Id*. Ultimately, based on these facts, Judge Kinkeade found that allowing recoupment to continue during the pendency of the plaintiff's ALJ hearing "effectively forces [the plaintiff] to close its business without providing the statutorily mandated procedural due process." *Id*. Consequently, Judge Kinkeade concluded, "forcing [the plaintiff] to wait three to five years for a hearing while overpayments are in recoupment creates a high risk of erroneous deprivation of [the plaintiff's] property interest." *Id*.

Here, Med-Cert's filings demonstrate that Med-Cert is a home health provider which obtains the vast majority of its revenue from "services provided to Medicare beneficiaries and paid for by the federal Medicare program." Affidavit of Mathew John at 2 ¶ 4. The same filings show that since CMS began recoupment: (1) Med-Cert's gross revenue has decreased by over 60%; (2) its net revenue has decreased by 95%; (3) it has had to reduce its staff by approximately 89% (from 18 to 2); and (4)

that ultimately– if recoupment is to continue during the pendency of Med-Cert's ALJ appeal–Med-Cert will be forced to shut down.[4]  *Id*. at 2-3.  Consequently, this court concludes, similarly to Judge Kinkeade in *Family Rehabilitation, Inc.*, that forcing Med-Cert to wait two to four years for a hearing before an ALJ while CMS recoups Med-Cert's Medicare payments creates a high risk of erroneous deprivation of Med-Cert's property interest.

The defendants argue that "Med-Cert faces a low risk of erroneous deprivation of [its] property interest, as it can escalate its appeal and receive the protections of Article III review."  Response at 20.  The court must therefore determine whether

---

[4]	The defendants argue that Med-Cert's claim that it will be forced to shut down if recoupment continues during the pendency of its appeal is unsupported by "concrete information to substantiate this allegation."  Response at 19.  The court disagrees.  As pointed out in Med-Cert's reply, Med-Cert's assertion that it will be forced to shut down is supported by the affidavit of Med-Cert's Chief Financial Officer, Mathew John.  Reply at 9 ¶ 15.  The sworn statements of a Chief Financial Officer, "[t]he executive in charge of making a company's accounting and fiscal decisions[,]" BLACK'S LAW DICTIONARY 270 (9th ed. 2009), are not tantamount to unsupported statements.  Moreover "[t]he law is well-settled that because the procedures governing a preliminary injunction are generally less formal than those at trial, the court may rely upon otherwise inadmissible evidence when considering a preliminary injunction." *ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 682 (N.D. Tex. 2015) (Fish, Senior J.) (citing *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).  In fact, "at the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence 'is appropriate given the character and objectives of the injunctive proceeding.'" *Id*. (quoting *Levi Strauss & Co. v. Sunrise International Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1985)).  Here, the court finds Med-Cert's affidavits appropriate, given Mathew John's position as Med-Cert's Chief Financial Officer.

escalation provides Med-Cert sufficient procedural due process for the defendants to begin recoupment of Med-Cert's alleged overpayments before an ALJ decides Med-Cert's appeal. Accordingly, a review of the appeals process is necessary.

As noted by the Fifth Circuit, to appeal an overpayment determination a provider must go through a four-level appeals process:

> First, it may submit to the MAC [Medicare Administrative Contractor] a claim for redetermination of the overpayment. 42 U.S.C. § 1395ff(a)(3)(A). Second, it may ask for reconsideration from a Qualified Independent Contractor ("QIC") hired by CMS for that purpose. *Id.* § 1395ff(c), (g); 42 C.F.R. § 405.904(a)(2). If the QIC affirms the MAC's determination, the MAC may begin recouping the overpayment by garnishing future reimbursements otherwise due to the provider. 42 U.S.C. § 1395ddd(f)(2); 42 C.F.R. § 405.371(a)(3). Third, the provider may request *de novo* review before an ALJ within the Office of Medicare Hearings and Appeals (OMHA), an agency independent of CMS. 42 U.S.C. § 1395ff(d); 42 C.F.R. § 405.1000(d). The ALJ stage presents the opportunity to have a live hearing, present testimony, cross-examine witnesses, and submit written statements of law and fact. 42 C.F.R. § 405.1036(c)-(d). The ALJ "shall conduct and conclude a hearing . . . and render a decision . . . not later than" 90 days after a timely request. 42 U.S.C. § 1395ff(d)(1)(A). Fourth, the provider may appeal to the Medicare Appeals Council ("Council"), an organization independent of both CMS and OMHA. 42 C.F.R. § 405.1100. The Council reviews the ALJ's decision *de novo* and is similarly required to issue a final decision within 90 days. *Id.* Furthermore, if the ALJ fails to issue a decision within 90 days, the provider may "escalate" the appeal to the Council, which will review the QIC's reconsideration. *Id.*

*Family Rehabilitation, Inc.*, 886 F.3d at 499-500.  In addition, after going through all levels of the appeal process, "if a party is still dissatisfied, the party may request judicial review in a federal district court." *Family Rehabilitation, Inc.*, 2018 WL 3155911 at *2.

Upon reviewing the appeals process, it is clear to the court that escalation fails to provide adequate procedural due process, as it "does not adequately protect the procedural safeguards the statute provides the appealing party." *Adams EMS, Inc.*, 2018 WL 5264244, at *10.   First, as pointed out by the Fifth Circuit, the ALJ hearing presents appellants like Med-Cert with the opportunity to have a live hearing, present testimony, submit written statements of law and fact, and cross-examine witnesses.  *Family Rehabilitation, Inc.*, 886 F.3d at 499; 42 U.S.C. § 1395ff(d)(1)(A) ("an administrative law judge shall conduct and conclude a hearing on a decision of a qualified independent contractor . . . .").  "By contrast, when a party escalates their claim to the Medicare Appeals Council, the Council may, but is not required to, conduct additional proceedings, including a hearing." *Adams EMS, Inc.*, 2018 WL 5264244, at *10.  In fact, ["t]he Council may instead issue a decision based on the record without supplementation, remand the case to the administrative law judge, or dismiss the request." *Id*.  Because escalation would not guarantee Med-Cert a hearing with the opportunity to cross examine witnesses, the court finds that escalation does not provide the same procedural safeguards offered by an ALJ appeal.

See *Adams EMS Inc.*, 2018 WL 5264244, at *10 (concluding the same); *Family Rehabilitation, Inc.*, 2018 WL 3155911 at *5 (concluding that "Escalation does not provide a remedy to the backlogged ALJs because it does not provide adequate procedural due process").

The defendants contend that a live hearing before an ALJ does not provide much additional protection to appellants like Med-Cert because a hearing will not result in a substantial change in the record on review before the ALJ. Response at 20 ¶ 21. While it is true that here Med-Cert does not seek to add documents to the evidentiary record, Reply at 12, and that at an ALJ hearing no new written evidence may be presented without good cause if the evidence was not previously submitted for consideration by the QIC, 42 C.F.R. §§ 405.1018, 405.1028, the court does not agree with defendants' claim. As stated above, at an ALJ hearing Med-Cert will be given the opportunity to cross-examine the witness—an opportunity not guaranteed by escalation. It should come as no surprise that cross-examination may help develop a record before a court. See e.g., *Geders v. United States*, 425 U.S. 80, 89-90 (1976) ("Skillful cross-examination could develop a record . . . .). Accordingly, the court cannot agree with the defendants' claim that an ALJ hearing offers no additional protection because a hearing will not result in a substantial change in the record.

Nor can the court agree with the defendants' contention that escalation of Med-Cert's appeal to a district court will provide Med-Cert with sufficient procedural

due process to mitigate the risk of erroneous deprivation of Med-Cert's property. First, even if Med-Cert escalates its claim from the ALJ level to the Council, there is no guarantee that Med-Cert will be able to escalate its appeal to a district court. For Med-Cert to escalate its appeal to a district court, it must be the case that the Council has not completed its review of the ALJ's or QIC's decision within the applicable adjudication period. 42 C.F.R. § 405.1136(a)(1). Second, the standard of review exercised by a district court on appeal would be different than that of an ALJ. The ALJ must exercise *de novo* review. 42 C.F.R. § 405.1000(d). In contrast, a district court's review of a QIC's decision is more deferential. See *Superior Home Health Services, LLC v. Azar*, No. 5:15-CV-000636-RCL, 2018 WL 3717121, at *3 (W.D. Tex. Aug. 3, 2018) (applying the Administrative Procedure Act's arbitrary and capricious standard, which is generally deferential to administrative proceedings, when reviewing the Council's overpayment determination); *American Hospital Association v. Burwell*, 812 F.3d 183, 191 (D.C. Cir. 2016) (concluding that a district court's review of a QIC's overpayment determination would be more deferential than an ALJ's *de novo* review, based on government's admission that district court review would be deferential). For these reasons, the court does not believe that escalation of Med-Cert's appeal to a district court would provide Med-Cert with sufficient procedural due process.

Since the court has concluded that Med-Cert has a property interest, and that there is a high risk of erroneous deprivation of this interest, the court must now consider the third *Eldridge* factor. Here, the court finds that the defendants' interest in recouping Med-Cert's alleged overpayments will not be adversely affected by delaying the recoupment until after the ALJ's determination because the defendants will still be able to recoup the overpayment amount if the ALJ determination is in their favor. The defendants argue that if recoupment is delayed until after the ALJ's determination, it is likely that Med-Cert will declare bankruptcy and not pay the alleged overpayments. Response at 11. As Med-Cert pointed out at the hearing on its motion for temporary restraining order, Medicare recoupments are not dischargeable in bankruptcy. Transcript at 5:4-5:6; see also *In re Fischbach*, No. 1:12-cv-00513-JMC, 2013 WL 1194850, at *2 (D. S.C. Mar. 22, 2013) ("The automatic stay provided for in the Bankruptcy Code does not apply to recoupment, and recoupment is not prohibited by the Bankruptcy Code's discharge injunction . . . [nor is it] limited to pre-petition claims and thus may be employed to recover across the petition date.") (internal citations and quotations omitted). Even further, as Judge Kinkeade stated in *Family Rehabilitation, Inc.*, the defendants' argument "makes a number of assumptions and does not outweigh [the plaintiff's] ongoing deprivation of its property interest without sufficient procedural due process." *Family Rehabilitation, Inc.*, 2018 WL 3155911, at *6.

Because the court has found that Med-Cert satisfies all three of the *Eldridge* factors, it concludes that Med-Cert has established a substantial likelihood of success on the merits of its procedural due process claim. Therefore, the court finds that the first preliminary injunction factor weighs in favor of granting injunctive relief.

## B. Irreparable Injury

"An irreparable injury is one that cannot be remedied by an award of economic damages." *Bennigan's Franchising Co., L.P. v. Swigonski*, No. 3:06-CV-2300-G, 2007 WL 603370, at *4 (N.D. Tex. 2007) (Fish, Chief Judge) (quoting *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)). To establish irreparable injury, the movant must establish "a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Family Rehabilitation, Inc.*, 2018 WL 3155911 at *6 (quoting *Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1986)). "In the Medicare withholding context, going out of business can be sufficient evidence of irreparable injury." *Id*. (quoting *MaxMed Healthcare, Inc. v. Burwell*, No SA:14-CV-988-DAE, 2015 WL 1310567, at *3 (W.D. Tex. 2015)); see also *Adams EMS, Inc.*, 2018 WL 5264244 at *10.

Here, CMS continues to recoup over 1.7 million dollars in alleged overpayments without Med-Cert receiving the statutorily required ALJ hearing and overpayment determination. Since CMS began recoupment, Med-Cert has laid off

16 staff members and its gross revenue has decreased by over 60% while its net revenue has decreased by 95%. Affidavit of Mathew John at 2-3. Med-Cert will be forced out of business if recoupment continues in this manner before an ALJ hears and decides Med-Cert's appeal.

In addition, Med-Cert argues that if recoupment continues while its ALJ appeal is pending, Med-Cert "will lose its Medicare Provider Number along with its contract with Medicare to be paid for services to Medicare beneficiaries" since it will be unable to keep a Medicare beneficiary as a patient. Plaintiff's Proposed Findings of Fact and Conclusions of Law at 9 ¶ 23. Specifically, Med-Cert maintains that to keep its Medicare Provider Number it must continue patient services for at least one patient during the pendency of its appeal, which it cannot do. *Id*. Med-Cert further avers that losing its Medicare Provider Number constitutes irreparable injury because the regional Medicare office in Dallas has issued a freeze on issuing new CMS provider numbers for home health agencies in Texas, meaning that if Med-Cert loses its number it will not be able to obtain a new one. *Id*. at 9 ¶ 25.

The defendants make multiple arguments as to why Med-Cert will not be irreparably injured if recoupment continues during the pendency of Med-Cert's appeal. First, the defendants allege that Med-Cert has failed to provide sufficient evidence to establish that it will shut down if recoupment continues while Med-Cert's ALJ appeal is pending. Response at 19. As discussed above, the court disagrees. *See*

*supra* n. 4. Med-Cert's claims are supported by the affidavit of Med-Cert's Chief Financial Officer, Mathew John, and are sufficient to support Med-Cert's claim.

Second, the defendants maintain that Med-Cert faces no risk of irreparable injury because if Med-Cert escalated its appeal it could have either resolved the appeal before the Medicare Appeals Council, or could be in federal district court litigating the overpayment determination. Response at 22. Escalation does not establish that Med-Cert has no substantial threat of irreparably injury, however. See *Family Rehabilitation, Inc.*, 2018 WL 3155911, at *6 ("Neither of these options, however, establishes that [the plaintiff] has no substantial threat of irreparable injury."). As discussed above, escalation deprives Med-Cert of an evidentiary hearing and offers inadequate procedural due process. Moreover, as Judge Kinkeade noted in *Family Rehabilitation, Inc.*, "[u]nder [the] [d]efendants' theory, what is an alternative appeals process under the statute would instead become a mandatory appeals process, which was not the intended purpose of escalation." *Id*. (citing 42 U.S.C. § 1395ff(d)(3)(A)).

Third, the defendants argue that Med-Cert is not at risk of losing its Medicare Provider Number. Response at 21-22. Specifically, the defendants maintain that to keep its Medicare Provider Number Med-Cert only needs to provide services to one Medicare beneficiary every twelve months pursuant to 42 C.F.R. § 424.540(a)(1). *Id*. The defendants claim that Med-Cert can provide services to at least one

beneficiary before this court decides Med-Cert's due process claim, thus ensuring that Med-Cert will not lose its Medicare Provider Number. Moreover, the defendants allege that even if Med-Cert loses its Medicare Provider Number, it will be unaffected by the freeze on new Medicare Provider Numbers because Med-Cert will only need to reactivate their existing provider number, rather than obtain a new number. Response at 22; Appendix to Defendants' Proposed Findings of Fact and Conclusions of Law, Declaration of Alisha Sanders at 2 ¶¶ 4-6 (docket entry 20).

This court disagrees. If Med-Cert wishes to keep its Medicare Provider Number, it must continue providing patient services to at least one Medicare beneficiary every twelve months. 42 C.F.R. § 424.540(a)(1). This means that to keep its Medicare Provider Number, Med-Cert will have to pay staff to care for Medicare patients without receiving reimbursement payments from CMS, which Med-Cert cannot do. Reply at 13; Affidavit of Mathew John at 2. Moreover, the freeze on new Medicare Provider Numbers will likely affect Med-Cert, because Med-Cert will not simply be able to reactive their existing provider number as the defendants argue. If Med-Cert loses its Medicare Provider Number and later seeks to reactivate its Medicare billing privileges, Med-Cert must maintain a valid Texas license. 42 C.F.R. § 424.540(b)(3)(I). "For each license period, an agency must provide services to at least one client to be eligible to renew its license." 40 TEX. ADMINISTRATIVE CODE § 97.17(c). Therefore, for Med-Cert to keep its license so

that it may reactivate its Medicare Provider Number later, Med-Cert will have to pay

staff to care for patients without receiving reimbursement from CMS, which it cannot

do.  Reply at 13.  Consequently, if recoupment continues during the pendency of

Med-Cert's ALJ appeal, Med-Cert will be unable to pay staff to provide services for

Medicare beneficiaries, thereby jeopardizing Med-Cert's business, its Texas license,

and ultimately its Medicare Provider Number.

Fourth, the defendants aver that Med-Cert will not be irreparably injured if

recoupment continues because Med-Cert can continue to provide services to

Medicare beneficiaries and non-Medicare beneficiaries alike.  Response at 22.   Again,

the court disagrees.  Med-Cert's primary income is from Medicare reimbursements,

Plaintiff's Proposed Findings of Fact and Conclusions of Law at 9 ¶ 24, meaning if

the reimbursements are withheld as recoupment, Med-Cert will be unable to afford to

pay employees or provide services to Medicare beneficiaries and non-Medicare

beneficiaries alike.  The defendants further maintain that because Med-Cert chose to

structure its business around Medicare beneficiaries, Med-Cert knew it was subject to

post-payment audits and the possibility of recoupment and thus cannot complain

when an overpayment determination is made and recoupment begins.  Response at

22-23.  Although Med-Cert knew that recoupment was a possibility, Med-Cert did

not know that a future appeal before an ALJ would take years, or that while waiting

for a decision on its appeal Med-Cert would have to close its doors due to

recoupment. The court finds that the defendants' argument fails to establish that Med-Cert has no substantial threat of irreparable injury.

For the reasons stated above, this court finds that Med-Cert has sufficiently established a substantial threat of immediate and irreparable harm for which no adequate remedy at law exists. Consequently, the court finds that the second preliminary injunction factor weighs in favor of granting injunctive relief.

### C. The Threatened Injury to Med-Cert Outweighs the Threatened Harm to the Defendants

In addition to showing a substantial likelihood of success on the merits of its claim as well as a substantial threat of irreparable injury, to obtain a preliminary injunction Med-Cert "must show that the injury [it] will suffer if the court denies injunctive relief is greater than the injury the defendants will suffer if the relief is granted." *Bennigan's Franchising Co., L.P.*, 2007 WL 603370 at *5.

If the preliminary injunction is not granted, Med-Cert will have to shut its doors, its remaining employees will lose their jobs, and Med-Cert's remaining patients will lose access to a unique home healthcare provider that provides services in the patient's specific southeast Asian language or dialect. The defendants allege that granting the preliminary injunction will cause them greater harm, since an injunction would disrupt the required administration of the Medicare program and a delay would increase the odds that they will be unable to recoup Med-Cert's overpayment. Response at 11.

The court disagrees with the defendants and concludes that they will not be prejudiced by a delay. While an injunction will delay the government's ability to recoup any overpayments, the government will nevertheless be able to recoup the overpayment amount if the ALJ rules in its favor, especially since, as discussed above, recoupment is not easily dischargeable in bankruptcy. See *Family Rehabilitation, Inc.*, 2018 WL 3155911 at *7 ("Whereas, [the] [d]efendants will not suffer harm from granting the injunctive relief because they will have the opportunity to later recoup any overpayments if the ALJ reaches a decision in their favor"); *Adams Ems, Inc.*, 2018 WL 5264244 at *11 ("The government is not prejudiced by the delay").

For the reasons provided above, the court finds that the potential injury to the plaintiffs if the injunction is denied outweighs the injury to the defendants if the injunction is granted. The third preliminary injunction factor therefore weighs in favor of granting injunctive relief.

## D. The Public Interest

Finally, Med-Cert must show that granting the preliminary injunction will not disserve the public interest. Med-Cert argues that the public interest would not be adversely affected by granting the preliminary injunction because the public, and specifically southeast Asian refugees, would benefit from continued access to Med-Cert's services. Plaintiff's Proposed Findings of Fact and Conclusions of Law at 6

¶ 14.  The defendants allege that granting the injunction would disserve the public interest by overriding Congress' statutory scheme allowing recoupment to begin after the QIC has rendered a decision and by clashing with the United States District Court for the District of Columbia's mandamus order to eliminate the ALJ backlog by the end of fiscal year 2022.  Response at 13 ¶ 14.  The defendants further allege that granting the injunction would not serve the public interest because there are hundreds of other active home health agencies that could serve the public in the absence of Med-Cert's services.  *Id*.

After reviewing both parties' arguments, the court concludes that granting injunctive relief here would not disserve the public interest.  First, while Congress allowed recoupment to begin before the ALJ renders a decision, "Congress likely did not anticipate that decision being delayed much longer than the statutorily prescribed 90 days and certainly not a delay of [two] to [four] years." *Family Rehabilitation, Inc.*, 2018 WL 3155911 at *5.  Consequently, the court does not find that granting injunctive relief would disserve the public interest by conflicting with Congress' statutory scheme.

Second, nothing indicates that granting injunctive relief here would be at odds with the *American Hospital Association* court's mandamus order.  There, the court declined to include as part of its mandamus order the requirements that: (1) the government reduce the interest charged on funds that it has yet to recoup from

providers while appeals are pending; (2) providers be allowed to rebill their claims for six months following the issuance of the mandamus order; and (3) the government maintain its current programs to fight the backlog. *American Hospital Association*, 2018 WL 5723141 at *4. The court refused to include these additional requirements because they would "not necessarily improve delays" and because they were not directly related to the claim giving rise to the mandamus order. *Id.* Nothing in the district court's opinion signaled that granting injunctive relief in a related case would cause further delays, and the defendants have not proven that such a result would occur. Accordingly, this court concludes that granting injunctive relief would not adversely affect the public interest by clashing with the mandamus order issued in *American Hospital Association*.

Third, although there are other active home health agencies in the Dallas area, this court concludes that the public interest would be better served if injunctive relief is granted and Med-Cert stays in business. Unlike most home health agencies, Med-Cert provides unique services to an aging population from South East Asia who have special needs because of language and cultural differences in addition to exposure to Agent Orange. Exhibit K of Plaintiff's Additional Attachments at 3-4. The defendants have not shown that the other active home health agencies in the Dallas area provide similar services to Med-Cert or employ nurses who speak the same South East Asian languages and dialects as Med-Cert's patients and employees.

For the reasons stated above, the court concludes that the fourth preliminary injunction factor favors granting injunctive relief.

### III.  <u>CONCLUSION</u>

For the reasons stated above, Med-Cert's motion for preliminary injunction is **GRANTED**.  Counsel for Med-Cert shall submit, within fourteen days of this date, a proposed order of preliminary injunction in conformity with this memorandum opinion and order.

**SO ORDERED**.

February 4, 2019.

_A. Joe Fish_
_____
**A. JOE FISH**
**Senior United States District Judge**