IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MED-CERT HOME CARE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil No.  3:18-CV-02372-E |
| v. | § | |
| | § | |
| ALEX M. AZAR II, Secretary of the | § | |
| U.S. Department of Health and | § | |
| Human Services, and SEEMA VERMA, | § | |
| Administrator for Centers for | § | |
| Medicare and Medicaid Services, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff seeks to enjoin Defendants from recouping alleged Medicare overpayments from it before Plaintiff has had a hearing before an administrative law judge (ALJ). Before the Court are the parties' cross-motions for summary judgment (Docs. 40 and 42).  The Court has considered the motions, briefs, responses, replies, and the applicable law.  After careful consideration, the Court grants Plaintiff's motion for summary judgment and denies Defendants' motion.

## Background

Plaintiff Med-Cert Home Care, LLC is a home health agency.  Defendants Alex M. Azar II, Secretary of the U.S. Department of Health and Human Services (HHS), and Seema Verma, Administrator for the Centers for Medicare and Medicaid Services (CMS), claim that Med-Cert has received

nearly $2 million in overpayments from Medicare. Defendants have begun recouping the alleged overpayments by withholding reimbursement of Med-Cert's current and future Medicare claims. Med-Cert filed the instant suit seeking a permanent injunction to prevent Defendants from continuing to recoup over $1.7 million in "alleged extrapolated overpayments" before Med-Cert has had the opportunity to be heard by the ALJ. This case was transferred to the undersigned judge in September 2019. It was previously assigned to Judge Fish, who granted a preliminary injunction that enjoined Defendants from recouping the alleged overpayments until a decision from an ALJ. The following factual background is taken from the memorandum opinion and order that granted Plaintiff's motion for a preliminary injunction:

> This is a dispute between a recipient of Medicare payments and the government entit[ies] in charge of distributing Medicare payments and reviewing the claims of recipients who have received Medicare payments.
>
> ****
>
> Med-Cert has operated as a licensed Medicare certified agency since 2011 with no condition level deficiency. Med-Cert furnishes unique services to an aging population from South East Asia who have special needs because of language and cultural differences in addition to exposure to Agent Orange. On March 2, 2017, a CMS Zone Program Integrity Contractor (ZPIC) completed a post-payment audit of a random sample of Medicare Part A payments to Med-Cert. The ZPIC concluded that Med-Cert was overpaid on 97.8% of the reviewed claims, as the claims did not meet the necessary Medicare requirements for the type of services provided. Of the 46 claims reviewed, the ZPIC determined that 45 claims failed to fully meet the requirement for face-to-face physician evaluation of the patient to confirm homebound status and need for skilled nursing services. The ZPIC also found that

some claims failed to provide physician orders for the services or to provide appropriate documentation to support the services billed. The overpayment rate for the audited claims was extrapolated to all Med-Cert Medicare claims with process dates between February 5, 2015 and September 3, 2016, resulting in an extrapolated overpayment of $1,787,063.39.

*Med-Cert Home Care, LLC v. Azar*, 365 F. Supp. 3d 742, 345–46 (N.D. Tex. 2019) (record references omitted).

Med-Cert appealed the ZPIC's determination. To appeal an overpayment determination, there is a four-level appeals process. *Family Rehab., Inc. v. Azar*, 886 F.3d 496, 499 (5th Cir. 2018). First, a provider may submit to the Medicare Administrative Contractor (MAC) a claim for redetermination of the overpayment. *Id.* Second, it may ask for reconsideration from a Qualified Independent Contractor (QIC) hired by CMS for that purpose. *Id.* If the QIC affirms the MAC's determination, the MAC may begin recouping the overpayment by garnishing future reimbursements otherwise due the provider. *Id.* Third, the provider may request de novo review before an ALJ within the Office of Medicare Hearings and Appeals (OMHA), an agency independent of CMS. *Id.* The ALJ stage offers the opportunity to have a live hearing, present live testimony, cross examine witnesses, and submit written statements of law and fact. *Id.* The ALJ shall conduct and conclude a hearing and render a decision not later than ninety days after a timely request. *Id.*; *see* 42 U.S.C. § 1395ff(d)(1)(A). Fourth, the provider may appeal to the Medicare Appeals Council, another independent

organization, which reviews the ALJ's decision de novo. *Family Rehab.*, 886 F.3d at 499. Further, if the ALJ fails to render a decision within 90 days, the provider may escalate the appeal to the Council, which will review the QIC's reconsideration. *Id.* at 499–500.

In this case, the MAC conducted a new and independent review of the claims and upheld the ZPIC's overpayment determination. Med-Cert then appealed the MAC's decision to a QIC. The QIC also upheld the original determination of overpayment. After the QIC decision, Defendants began recouping the overpayments. Med-Cert timely appealed to the ALJ on December 28, 2017.

To date, no ALJ hearing has occurred. Although the ALJ is required by statute to hold a hearing and issue a decision within 90 days, there is a "massive backlog" for Medicare appeals pending before an ALJ. *See id.* at 498. As noted by Judge Fish, OMHA statistics show that the average processing time for ALJ appeals filed when Med-Cert filed its appeal is 3.3 years. *Med-Cert*, 365 F. Supp. 3d at 747.

Judge Fish's opinion and order outlined the effects of recoupment on Med-Cert:

> Med-Cert derives the vast majority of its net revenue (90% plus) from services provided to Medicare beneficiaries and paid for by the federal Medicare program. If CMS [is] allowed to recoup Med-Cert's Medicare payments during the two-to-four year pendency of Med-Cert's ALJ appeal, Med-Cert will not have the income to sustain itself.

Before the recoupment, Med-Cert employed 18 staff members. Currently, Med-Cert employs two staff members. If CMS is allowed to continue with recoupment Med-Cert will have to terminate the employment of its remaining two employees.

Med-Cert cannot pay the approximate $33,000.00 per month that a CMS payment plan would arrange.

The outcome of Med-Cert's appeal before the ALJ is unclear. . . . Nevertheless, statistics from the OMHA show that of appeals decided in the first three quarters of Fiscal Year 2018 only 17.2% were unfavorable to the appealing party, whereas 1% were partially favorable, 20.5% were unfavorable to the appealing party, and 61.3% of the appeals were dismissed.

If Med-Cert does not keep at least one patient on service during the pendency of the ALJ appeal, Med-Cert will lose its Medicare provider number.

*Id.* at 748 (record references omitted).

In its complaint, Med-Cert sought injunctive relief on three grounds. First, it alleged that Defendants violated its right to procedural due process by failing to comply with the statutorily mandated procedure for holding an ALJ hearing. Next, Med-Cert alleged that Defendants engaged in ultra vires actions against it. Finally, Med-Cert contended injunctive relief is appropriate under the Administrative Procedure Act. As an alternative to injunctive relief, Med-Cert sought an order of mandamus requiring Defendants to immediately provide an ALJ hearing. Under these circumstances, the Fifth Circuit has deemed the exhaustion of administrative remedies requirement waived because procedural due process and ultra vires

claims amount to a collateral challenge that cannot be remedied after the exhaustion of administrative review. *See Family Rehab.*, 886 F.3d at 501–04.

The Court's preliminary injunction order enjoins Defendants from withholding or offsetting Medicare payments and receivables to Med-Cert to effectuate the recoupment of alleged overpayments until an ALJ decision. It also ordered Defendants to return to Med-Cert any funds recouped and credited to the overpayment. Med-Cert seeks to convert the preliminary injunction into a permanent injunction. It has moved for summary judgment on its claim for violation of its right to procedural due process. Med-Cert contends it has satisfied the requisites for a permanent injunction as a matter of law.

Defendants have also filed a motion for summary judgment. They contend they are entitled to summary judgment on Med-Cert's claim for a permanent injunction. They assert Med-Cert has not demonstrated that it was denied due process.

To be entitled to summary judgment, a party must show there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). On cross-motions for summary judgment, the court reviews each party's motion independently, viewing the evidence and inferences in the light most favorable to the non-moving party. *Baker Hughes, Inc. v. U.S.*, 943 F.3d 255, 259 (5th Cir. 2019).

## Permanent Injunction

The elements of a permanent injunction are essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987). The party seeking a permanent injunction must show: (1) success on the merits, (2) the failure to grant the injunction will result in irreparable injury, (3) the injury outweighs any damage that the injunction will cause to the opposing party, and (4) the injunction will not disserve the public interest. *United Motorcoach Ass'n v. City of Austin*, 851 F.3d 489, 492–93 (5th Cir. 2017); *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006).

In *Family Rehabilitation, Inc. v. Azar*, Judge Kinkeade recently issued a permanent injunction under facts very similar to those in this case. *See* No. 3:17-CV-3008-K, 2020 WL 230615 (N.D. Tex. Jan. 15, 2020). The Court finds that opinion instructive and persuasive and reaches a similar result here.

### 1.  Success on the Merits

Because Med-Cert seeks to prevent recoupment until it receives certain procedures, success on the merits requires showing that these procedures are required before recoupment. *Family Rehab.*, 886 F.3d at 504 n.14. Med-Cert does not need to show that the outcome of the procedures would be favorable. *Id.*

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Due process is flexible and calls for such procedural protections as the particular situation demands. *Id.* at 334. When analyzing whether a party's procedural due process rights have been violated, courts weigh three factors:

> First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

Defendants argue that Med-Cert is not entitled to a permanent injunction because it cannot establish any of the *Mathews* factors. First, they assert Med-Cert does not have a constitutionally protected property interest in avoiding recoupment. A protectable property interest is one that is held by someone with a "legitimate claim of entitlement." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Defendants argue Med-Cert does not have a property interest in Medicare overpayments. But as noted by Judge Fish, Med-Cert does not claim a property interest in the alleged overpayments. It claims an interest in payment for properly billed claims that are now being recouped by Defendants. The Court concludes that Med-

Cert has a valid property interest in receiving Medicare payments for services rendered. *See Family Rehab.*, 2020 WL 230615, at *7; *Adams EMS, Inc. v. Azar*, No. H-18-1443, 2018 WL 5264244, at *10 (S.D. Tex. Oct. 23, 2018).

Turning to the risk of an erroneous deprivation of such property interest through the procedures used, Defendants assert that the existing procedures protect against the risk of erroneous deprivation. They note that Med-Cert completed two levels of administrative review prior to any recoupment. Defendants argue that the existing escalation procedure provides adequate procedural due process. They rely on the Fourth Circuit's recent decision in *Accident, Injury & Rehabilitation, PC v. Azar*, 943 F.3d 195 (4th Cir. 2019).

In that case, as in the instant case, the health care provider complained of HHS's recoupment of overpayments before completion of the "severely delayed administrative process." *Id.* at 197. The Fourth Circuit concluded that the district court erred in granting a preliminary injunction prohibiting recoupment efforts until the provider could get an ALJ hearing. *Id.* at 198, 204. The appellate court stated that the four-step review process specifically provided for delays through the escalation provisions. *Id.* at 204. It determined that because the provider elected not to avail itself of the escalation procedure, it could not complain that it was denied due process and had failed to show a likelihood of success on the merits. *Id.*; *see also*

*Infinity Healthcare Servs., Inc. v. Azar*, 349 F. Supp. 3d 587, 603–04 (S.D. Tex. 2018).

This Court disagrees and sides with those courts that have decided that the escalation procedure does not adequately protect due process rights. *See Family Rehab.*, 2020 WL 230615, at *9; *Adams*, 2018 WL 5264244, at *10. As noted by Judge Kinkeade in *Family Rehabilitation*, escalation requires a provider to give up its right to an ALJ hearing and permits the Council to rely solely on the QIC record. OMHA statistics show that an ALJ hearing is critical to decreasing the risk of erroneous deprivation. *Family Rehab.*, 2020 WL 230615, at *8–9. The most recent statistics show that in fiscal year 2018, 18.4% of ALJ decisions were favorable to providers, with 17.3% being fully favorable. *See* https://www.hhs.gov/about/agencies/omha/about/current-workload/decision-statistics/index.html. There were unfavorable decisions in 20.9% of cases. Similarly, in fiscal year 2019, 19.6% of ALJ decisions were favorable to providers, with 17.7% being fully favorable. *See id.* 26.1% of decisions were unfavorable. Defendants argue these numbers do not show much of a risk of erroneous deprivation. But the majority of ALJ appeals are dismissed without reaching the merits. Thus, looking at the statistics for those cases where an ALJ reaches the merits of the case, there is a high risk of erroneous deprivation arising from pre-ALJ proceedings. *See Family Rehab.*, 2020 WL 230615, at *8.

As to the third *Mathews* factor, Defendants argue that their strong interest in protecting the Medicare Trust Fund and ensuring the efficient administration of the Medicare program outweighs Med-Cert's limited interest in overpaid funds. As noted, Med-Cert's interest is in payment for services provided and covered under the act. Recoupment would cause Med-Cert to go out of business. As in *Family Rehabilitation*, the Court concludes that Defendants' interest is undercut by the lack of any substantial threat arising from delayed recoupment. *Id.* at *10. Defendants suggest that Med-Cert may declare bankruptcy, preventing the government from ever collecting the money Med-Cert owes. But Medicare debt is not dischargeable in bankruptcy. *Id.*

The Court finds that the *Mathews* factors weigh in favor of Med-Cert. Med-Cert's significant private interest combined with the high risk of erroneous deprivation outweighs the impact on Defendants' interest. *See id.* The current process is insufficient, and Med-Cert has established that Defendants have violated its right to due process.

### 2. Irreparable Injury

To be entitled to a permanent injunction, Med-Cert must also demonstrate that the failure to grant the injunction will result in irreparable injury. *Id.* at *11. Med-Cert points to evidence that it was forced to dramatically decrease its business operations as a result of the recoupment. According to Med-Cert's CFO, since recoupment began, it is down to just two

employees from 18. Med-Cert's gross revenue has been reduced by 60% and its net revenue by 95%. It does not have the funds to enter into a payment arrangement with Defendants. If recoupment continues, Med-Cert will be forced to close its doors and cease all patient care. Defendants argue that Med-Cert cannot show irreparable injury because it has a meaningful remedy at law, namely the ability to escalate and receive de novo review from the Council. But the Court has determined that the escalation procedure does not adequately protect due process rights. Med-Cert has established that the failure to grant the injunction will result in irreparable injury for which no adequate remedy at law exists.

### 3. Balance of Harm

The third element to consider is whether the injury to Med-Cert outweighs any damage that the injunction will cause the opposing party. As stated by Judge Kinkeade in *Family Rehabilitation*, "Going out business outweighs the burden of delayed recoupment." *Id*. The harm to Defendants is minimal because if an ALJ rules in their favor, they can begin to recoup the funds.

### 4. Public Interest

Finally, the Court has to consider whether an injunction will disserve the public interest. The quality of healthcare Med-Cert provides is not at issue. *See id*. No public interest would be adversely affected by granting the permanent injunction. *See id*. Med-Cert provides unique services to an aging

population from South East Asia who have special needs because of language and cultural differences, in addition to exposure to Agent Orange. Defendants' argument on this factor echoes its argument about the third *Mathews* factor, which the Court has determined against it. Med-Cert has established the necessary elements for a permanent injunction.

Defendants also contend they are entitled to summary judgment on Med-Cert's ultra vires claim, its request for an injunction under the APA, and its request for mandamus. Since the Court has determined Med-Cert is entitled to a permanent injunction due to violations of procedural due process, it need not consider Defendants' assertions that Med-Cert is not entitled to prevail on its alternative claims. Accordingly, the Court grants Med-Cert's motion for summary judgment and denies Defendants' motion for summary judgment.

**SO ORDERED**.

Signed March 11, 2020.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE