IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MED-CERT HOME CARE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-02372-E |
| | § | |
| XAVIER BECERRA, Secretary of the | § | |
| United States Department of Health and | § | |
| Human Services; and CHIQUITA | § | |
| BROOKS-LASURE, Administrator for the | § | |
| Centers for Medicare and Medicaid Services, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following motions: (1) Plaintiff Med-Cert Home Care, LLC's ("Plaintiff" or "Med-Cert") Motion for Summary Judgment, (ECF No. 71), and (2) Defendant Xavier Becerra, Secretary of the United States Department of Health and Human Services ("HHS"), and Defendant Chiquita Brooks-Lasure's, Administrator for the Centers for Medicare and Medicaid Services ("CMS"), (collectively, "Defendants") Cross-Motion for Summary Judgment, (ECF No. 73). For the reasons discussed below, the Court hereby (1) **DENIES** Plaintiff's Motion for Summary Judgment and (2) **GRANTS** Defendants' Cross-Motion for Summary Judgment.

## I. BACKGROUND

This case arises out of a dispute over (1) a determination that Plaintiff was overpaid for claims submitted to the Medicare program and (2) the subsequent administrative appeal of the overpayment determination. Plaintiff is a home health agency that previously provided skilled nursing care, restorative therapy, and other medical social services to patients in the patients'

homes, in assisted living facilities, and in retirement communities. (ECF No. 1, pg. 10). Plaintiff has operated as a licensed Medicare certified agency since 2011. (ECF No. 72, pg. 6). Defendant Xavier Becerra is the Secretary for HHS, which has overall responsibility for the Medicare program. 42 U.S.C. § 1395hh(a)(1). Defendant Chiquita Brooks-Lasure is the Administrator for the Centers for Medicare and Medicaid Services, which is a division of HHS and is responsible for overseeing the Medicare program.

A.      **The Regulatory Framework**

HHS and CMS contract with Medicare Administrative Contractors ("MACs"), which are private government contractors that assist with Medicare program activities, including processing claims, calculating the amount of benefits due, and making payments. 42 U.S.C. §§ 1395u(a), 1395kk-1(a), 1395ddd; 42 C.F.R. §§ 421.200 *et seq.* Given the volume of claims submitted annually to the Medicare program by certified Medicare health providers, the Medicare program "cannot inspect each claim as it comes. Instead, it generally pays facially valid claims, and conducts post-payment audits to detect over payments." *Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 525 (5th Cir. 2020) (citing 42 U.S.C. § 1395ddd) (additional citation omitted). Medicare program payment audits are conducted by Zone Program Integrity Contractors ("ZPICs"), which are private contractors working for the CMS. When a ZPIC identifies an overpayment, it notifies the initial private contractor (the MAC), which then issues a demand letter to the provider.

"Providers who wish to challenge an overpayment determination have access to four phases of administrative review culminating in a phase five judicial review." *Id.* at 526 (citing 42 U.S.C. § 1395ff). The Fifth Circuit has outlined the regulatory framework governing the review of overpayment determinations:

> The first phase of administrative review is a "redetermination" from an [MAC]. *See* 42 U.S.C. § 1395ff(a)(3); 42 C.F.R. § 405.948. Second, a provider can seek

"reconsideration" from a qualified independent contractor [("QIC")]. *See* 42 U.S.C. § 1395ff(b)–(c), (g); 42 C.F.R. §§ 405.902, 405.904(a)(2). At steps one and two, a provider may submit additional evidence and must put forth a written explanation of its disagreement with the initial determination. 42 C.F.R. §§ 405.946(a); 405.966(a). If it wants to submit evidence, that is the time: "A provider of services or supplier may not introduce evidence" after step two "unless there is good cause which precluded the introduction of such evidence at or before that reconsideration." 42 U.S.C. § 1395ff(b)(3); 42 C.F.R. § 405.966(a)(2). Redetermination at step one and reconsideration at step two result in reasoned, written decisions. *See* 42 U.S.C. § 1395ff(a)(5) (requiring "written notice" with "specific reasons" at step one); 42 C.F.R. § 405.956(b) (detailing content of step one decision); 42 U.S.C. § 1395ff(c)(3)(E) (requiring "a detailed explanation of the decision" at step two); 42 C.F.R. § 405.976(b) (detailing content of step two decision). The process does not end there.

At step three, a provider is entitled to a hearing and decision from an [Administrative Law Judge ("ALJ")], who must "render a decision on such hearing by not later than the end of the 90-day period" after the request was timely filed. 42 U.S.C. § 1395ff(d)(1)(A). Congress specified what happens when an ALJ misses that deadline:

> In the case of a failure by an administrative law judge to render a decision by the end of the period described in paragraph (1), the party requesting the hearing may request a review by [the Medicare Appeals Council] notwithstanding any requirements for a hearing for purposes of the party's right to such a review.

42 U.S.C. § 1395ff(d)(3)(A).

The Appeals [Council] then has 90 days to conduct a *de novo* review and issue a decision, or 180 days if the case was "escalated" to skip the step-three hearing. 42 U.S.C. § 1395ff(d)(2)(A); 42 C.F.R. §§ 405.1100(c) (de novo review); 405.1100(d) (180 days if escalated). Congress anticipated that the Appeals [Council] deadline might pose some problems. After 180 days have passed without a board decision, the statute permits a party to "seek judicial review, notwithstanding any requirements for a hearing for purposes of the party's right to such a judicial review." 42 U.S.C. § 1395ff(d)(3)(B).

Recoupment is "the recovery by Medicare of any outstanding Medicare debt by reducing present or future Medicare payments and applying the amount withheld to the indebtedness." 42 C.F.R. § 405.370. Congress prohibited HHS from recouping payments during the first two stages of administrative review. 42 U.S.C. § 1395ff(f)(2)(A). After those two appeals, however, if a provider is still found to have been overpaid, "recoupment remains in effect." 42 C.F.R. § 405.379(d)(4)-(5). HHS must provide an overpaid provider with notice and an opportunity to respond in writing. 42 C.F.R. §§ 405.373(a), (b)(1).

If repayment of an overpayment would constitute an "extreme hardship, as determined by the Secretary," the agency "shall enter into a plan with the provider" for repayment "over a period of at least 60 months but ... not longer than 5 years." 42 U.S.C. § 1395ddd(f)(1)(A). That hardship safety valve has some exceptions that work against insolvent providers. If "the Secretary has reason to believe that the provider of services or supplier may file for bankruptcy or otherwise cease to do business or discontinue participation" in the Medicare program, then the extended repayment plan is off the table. 42 U.S.C. § 1395ddd(f)(1)(C)(i). A provider that ultimately succeeds in overturning an overpayment determination receives the wrongfully recouped payments with interest. 42 U.S.C. § 1395ddd(f)(2)(B).

*Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 526-27 (5th Cir. 2020).

**B.     Factual and Procedural Background**

   *1.     The Overpayment Determination and Administrative Appeal*

In 2017, Health Integrity, L.L.C.—a ZPIC—completed a post-payment audit of a random sample of 46 Medicare payments made to Plaintiff. (ECF No. 4, pg. 35). The ZPIC determined (1) that Plaintiff was overpaid on 45 of those payments—97.8%—and (2) that the claims did not meet the necessary Medicare requirements for the type of services provided. (ECF No. 4, pg. 41). The overpayment rate for the audited claims was extrapolated to all of Plaintiff's Medicare claims with process dates between February 1, 2021, and September 3, 2016, resulting in an extrapolated overpayment of $1,787,063.39. (ECF No. 4, pg. 35).

On April 26, 2017, Plaintiff appealed the ZPIC's overpayment determination to the first level of the Medicare administrative appeals process, requesting a "redetermination" from an MAC. (ECF No. 4, pgs. 53-98). In support of its request for redetermination, Plaintiff provided documentary and testimonial evidence. (ECF No. 72, pg. 7) (ECF No. 4, pgs. 53-98). On June 28, 2017, the MAC notified Plaintiff that it denied Plaintiff's request for redetermination and upheld the ZPIC's overpayment determination. (ECF No. 4, pgs. 100-29).

Plaintiff then appealed the MAC's decision and submitted a request for "reconsideration" from a qualified independent contractor ("QIC"). (ECF No. 4, pgs. 130-37). On November 9, 2017,

the QIC notified Plaintiff that Plaintiff's appeal of the MAC's redetermination decision was unsuccessful, thereby affirming the previous overpayment determination. (ECF No. 4, pgs. 144-91). In its letter informing Plaintiff of its decision, the QIC informed Plaintiff that it had the right to appeal the reconsideration decision to an Administrative Law Judge ("ALJ"). (ECF No. 4, pg. 191). The letter also stated that "the recoupment [of overpayment] will begin 31 days from the date of this letter in the absence of an acceptable request for an extended repayment schedule." (ECF No. 4, pg. 144). On December 28, 2017, Plaintiff timely filed its request for an ALJ hearing. (ECF No. 4, pgs. 193-216). Recoupment of the overpaid amount began in January 2018. (ECF No. 1, pg. 26).

### 2.    *The Federal Court Suit*

On September 7, 2018, more than eight months after requesting an ALJ hearing, Plaintiff sued Defendants in federal court. In its Verified Complaint for Temporary Restraining Order and Preliminary Injunction (the "Complaint"), Plaintiff alleges that—even if it were to utilize the Medicare program's five-year hardship repayment program—it would be unable to pay the estimated $33,000 monthly payment because Plaintiff generated an average net monthly income of $7,953.00 at the time of filing. (ECF No. 1, pg. 16). Accordingly, Plaintiff sought: (1) "a temporary restraining order and a preliminary injunction preventing the Defendants from recouping the nearly $2 million alleged overpayment resulting from the claim disputed by Med-Cert until Med-Cert has been afforded a hearing before an impartial and unbiased ALJ;" or, in the alternative, (2) "an order requiring Defendants to immediately provide Med-Cert with the ALJ hearing, as mandated by statute." (ECF No. 1, pgs. 14-15). Plaintiff's Complaint asserts the following causes of action: (1) a claim for the violation of Plaintiff's procedural due process rights, (ECF No. 1, pgs. 31-32); (2) an *ultra vires* claim, alleging that "Defendants are recouping from

Med-Cert's Medicare payments even though they cannot and will not provide an ALJ hearing within the statutorily required time frame;" (3) a claim for injunctive relief under § 705 of the Administrative Procedure Act ("APA") "to prevent irreparable injury and preserve the Court's jurisdiction to review the result of the administrative appeals process related to the underlying billing dispute," (ECF No. 1, pg. 32-33); and (4) a claim for mandamus relief "requiring Defendants to provide Med-Cert with a hearing before an ALJ and a decision from the ALJ within 90 days of the Court's order," (ECF No. 1, pgs. 34-35).

On February 15, 2019, United Stated District Court Senior Judge A. Joe Fish entered an Order of Preliminary Injunction in this case, requiring Defendants to: (1) refrain from withholding or offsetting Medicare payments and receivables to Plaintiff to effectuate the recoupment of the alleged overpayments in the underlying claim; and (2) return to Plaintiff "any funds recouped and credited to the alleged overpayment." (ECF No. 30). On October 8, 2019, this case was transferred to United States District Judge Ada E. Brown. (ECF No. 52). On March 11, 2020, this Court issued a Memorandum Opinion and Order that: (1) granted Plaintiff's Motion for Summary Judgment, (ECF No. 40); (2) denied Defendants' Cross-Motion for Summary Judgment, (ECF No. 42); and (3) entered a permanent injunction against Defendant on Plaintiff's procedural due process claim. *See generally Med-Cert Home Care, LLC v. Azar*, 444 F. Supp. 3d 756 (N.D. Tex. 2020), *rev'd and remanded sub nom. Med-Cert Home Care, L.L.C. v. Becerra*, 19 F.4th 828 (5th Cir. 2021). That same day, the Court entered its Final Judgment and Permanent Injunction to that effect. (ECF No. 57).

### 3.   *The Appeal of the Permanent Injunction*

Defendants appealed the Court's Final Judgment and Permanent Injunction to the United States Court of Appeals for the Fifth Circuit. (ECF No. 60). On January 31, 2022, the Fifth Circuit

reversed and remanded the Court's Final Judgment and Permanent Injunction due to an intervening change in the law. *See Med-Cert Home Care, L.L.C. v. Becerra*, 19 F.4th 828, 829 (5th Cir. 2021) (citing *Sahara*, 975 F.3d 523). The Fifth Circuit explained:

> Med-Cert's procedural due process claim is foreclosed by *Sahara*. There, we explained that the provider's inability to explain why "steps one and two, standing alone, fail to satisfy the constitutional requirement" was fatal. *Sahara*, 975 F.3d at 531. Though the step-three ALJ hearing gives providers the chance to present live testimony and to cross-examine witnesses, it does not (absent good cause) allow the provider to supplement the evidence that it presented in steps one and two. Just like the provider in *Sahara*, Med-Cert admits it "has no need to provide more evidence." This cuts against Med-Cert's purported need for a live hearing because the hearing will only rehash what has already been produced. *See id.* at 531–32.
>
> Also in-line with the provider in *Sahara*, Med-Cert cannot "explain how the possibility of cross-examination at the hearing would benefit it." *Id.* at 531. Cross-examination is most helpful when material facts are in dispute and the case turns on the credibility or veracity of the government's witnesses. *Id.* That is not the case here.

*Med-Cert*, 19 F.4th at 830. The Fifth Circuit (1) reversed this Court's grant of summary judgment and permanent injunction on the procedural due process claim, but (2) remanded this case for consideration of Plaintiff's alternative claims because this Court did not resolve those claims in the first instance. *Med-Cert*, 19 F.4th at 831.

### 4.    *The Subsequent Proceedings after Remand*

After the Fifth Circuit remanded this case and before the Parties filed their instant cross-motions for summary judgment, Plaintiff received its ALJ hearing on May 17, 2022. (*See* ECF No. 72-1). On June 10, 2022, the ALJ issued a decision on the appeal. (ECF No. 72-1, pgs. 5-8). Plaintiff then filed its request for review by the Medicare Appeals Council ("Appeals Council")— the fourth level of the administrative appeals process—on or about August 11, 2022. (ECF No 72-1, pg. 3). As of the date of this Memorandum Opinion and Order, Plaintiff's request for Appeals Council review remains pending—that is, the Appeals Council has not issued its decision within

---

the 180 days.

On remand, the Parties have filed dueling motions for summary judgment on Plaintiff's remaining claims—that is, (1) the *ultra vires* claim, (2) the claim for injunctive relief under the APA, and (3) the claim for mandamus relief. On February 7, 2023, Plaintiff filed its Motion for Summary Judgment, (ECF No. 71), and accompanying Brief in Support of Its Motion for Summary Judgment (the "Brief in Support"), (ECF No. 72). Because Plaintiff has received the ALJ hearing that was the subject of its Complaint, Plaintiff now asserts in its Brief in Support an alternative basis for summary judgment—the delay at the *fourth* level of the administrative appeals process. (*See* ECF No. 72, pg. 5). Plaintiff seeks: (1) a preliminary injunction on the basis of its *ultra vires* and APA claims enjoining Defendants from recouping the alleged overpayment amount while Plaintiff awaits adjudication of its appeal to the Appeals Council, (ECF No. 72, pgs. 11-18); and, in the alternative, (2) an order of mandamus requiring Defendants to "properly adjudicate its administrative appeal," (ECF No. 72, pgs. 18-25).

In Defendant(s)' Cross-Motion for Summary Judgment, (ECF No. 73), and Consolidated Brief in Support of Defendants' Cross-Motion for Summary Judgment and Defendants' Response to Plaintiff's Motion for Summary Judgment ("Defendants' Consolidated Brief"), (ECF No. 75), Defendants argue (1) that Plaintiff's Motion for Summary Judgment should be denied and (2) the remaining alternative claims should be dismissed. Specifically, Defendants argue that: (1) Plaintiff's claims are now moot because Plaintiff has received the ALJ hearing it requested in its Complaint; (2) Plaintiff has effectively and improperly amended its claims through its summary-judgment motion; and (3) Defendants are entitled to summary judgment on all three of Plaintiff's remaining alternative claims for relief. Both Plaintiff's Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment have been fully briefed and are ripe for

determination.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). On cross-motions for summary judgment, the court reviews each party's motion independently, viewing the evidence and inferences in the light most favorable to the non-moving party. *Baker Hughes, Inc. v. U.S.,* 943 F.3d 255, 259 (5th Cir. 2019). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A dispute of a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Id.* The moving party bears the burden of showing that summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323. The moving party meets its burden by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp.*, 477 U.S. at 323; FED. R. CIV. P. 56.

When reviewing the evidence on a motion for summary judgment, the Court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). The Court cannot make a credibility determination in light of conflicting evidence or competing inference. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Anderson*, 477 U.S. at 250.

## III.  ANALYSIS

The Court concludes that Defendants are entitled to summary judgment on Plaintiff's remaining alternative claims, and consequently, Plaintiff's remaining claims must be dismissed. First, Plaintiff's claims, as pleaded, are now moot because Plaintiff has received the ALJ hearing which was the subject of the relief it requested the Complaint. Second, the Court concludes that Plaintiff constructively requested leave to amend its pleadings through its Motion for Summary Judgment. The Court denies the request for leave to amend because such amendments—as Plaintiff asserts in the Motion for Summary Judgment—would be futile. Thus, Plaintiff's claims are not justiciable and must be dismissed. Finally, in the alternative, the Court concludes that—assuming *arguendo* that the Court were to consider Plaintiff's amendments—Defendants would be entitled to summary judgment on Plaintiff's remaining alternative claims for relief.

### A.    Plaintiff's Alternative Claims for Relief are Dismissed as Non-Justiciable.

Upon concluding that Plaintiff did not have a viable procedural due process claim, the Fifth Circuit remanded this case for consideration of Plaintiff's alternative claims for relief in the first instance by this Court. *Med-Cert*, 19 F.4th at 831. Those claims are: (1) an *ultra vires* claim, seeking injunctive relief; (2) a claim for injunctive relief under the APA; and (3) a claim for mandamus relief. The Court concludes that each of these claims are now moot because (1) Plaintiff has received the relief it requested in its Complaint and (2) Plaintiff's constructive request for leave to amend its Complaint is denied as futile.

#### 1.    *Plaintiff's Alternative Claims for Relief, As Pleaded in the Complaint, are Moot.*

Plaintiff's Complaint relates to the HHS's delay in affording Plaintiff its requested ALJ hearing at the third stage of the administrative appeals process. Defendants contend that Plaintiff's remaining alternative claims have been mooted by the occurrence of the ALJ hearing. For the

reasons discussed below, the Court agrees.

      (i)    <u>The Alternative Claims for Relief in Plaintiff's Complaint</u>

Aside from the procedural due process claim, Plaintiff's Complaint asserts three alternative claims for relief. The first two underlie Plaintiff's request for injunctive relief. The third is a claim for mandamus relief. The entirety of the factual allegations contained in the Complaint relate to the delay at the third level of the administrative appeal process—that its, at the time Plaintiff filed the Complaint, Plaintiff had yet to receive an ALJ hearing eight months after requesting one. (*See* ECF No. 1, pg. 26).

Plaintiff's request for injunctive relief is based on (1) an *ultra vires* claim and (2) a claim under the APA for a "preservation of status or rights" injunction, 5 U.S.C. §§ 704, 705.[1] With respect to the *ultra vires* claim, the Complaint states:

> *Defendants are required to provide Med-Cert with an ALJ hearing and decision within 90 days of its request.* 42 U.S.C. § 1395ff(d)(1)(A); 42 C.F.R. § 405.1016(a).

> Defendants are recouping from Med-Cert's Medicare payments even though they cannot and will not provide an *ALJ hearing* in the statutorily required time frame.

---

[1] Section 704 of the APA states:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § 704. Section 705 of the APA states:

> When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

5 U.S.C. § 705.

---

MEMORANDUM OPINION AND ORDER                                      

> The Court should enjoin Defendants from engaging in such ultra vires actions against Med-Cert, which actions are contrary to the limitations on Defendants' authority as set forth in Title XVII of the Social Security Act.

(ECF No. 1, pg. 32) (emphasis added in italics). With respect to the APA claim, the Complaint states:

> As outlined above, Med-Cert has meritorious challenges to the billing dispute underlying the recoupment of Medicare payments, and will vigorously assert its arguments during the administrative appeals process that has already been initiated as promptly and expeditiously *as the ALJ can accommodate*. In the meantime, if immediate injunctive relief is not granted "to preserve the status or rights pending conclusion of the proceedings," however [Plaintiff's] right to administrative review in an *ALJ hearing* will be eliminated by the inability of Med-Cert to remain in existence due to the crippling effect of the threatened Medicare recoupment. Furthermore, Med-Cert's remaining employees and patients will suffer irreparable harm in the absence of an injunction.

> Accordingly, pursuant to 5 U.S.C § 705, issuance of the injunctive relief sought in this case is necessary and appropriate in order to prevent irreparable injury and to preserve the Court's jurisdiction to review the result of the administrative appeals process related to the underlying billing dispute.

(ECF No. 1, pgs. 33) (emphasis added in italics). Finally, with respect to Plaintiff's claim for mandamus relief, the Complaint states:

> Med-Cert has a clear right to relief because Defendants have failed to provide Med-Cert with an *ALJ hearing and decision within 90 days, as required by statute*.

> Defendants have a clear duty to act because the action at issue is nondiscretionary. [*Wolcott v. Sebelius,* 635 F.3d 757, 768 (5th Cir. 2011)]. Specifically, pursuant to 42 U.S.C. § 1395ff(d)(l)(A) and 42 C.F.R. § 405.1016, Defendants have a nondiscretionary duty to provide Med-Cert with *a de novo hearing before an ALJ, and with a decision from the ALJ, within 90 days of [Plaintiff's] timely request*.

> Med-Cert submitted a *timely request for an ALJ hearing* on December 28, 2017. Therefore, 90-day period mandated by statute expired on March 28, 2018. However, Med-Cert has received neither the hearing nor the decision mandated by statute. Indeed, *the hearing has not been scheduled nor has an ALJ been assigned. Due to the backlog of appeals at the ALJ level*, without intervention by this Court, Med-Cert will be forced to wait three to five years to obtain the statutorily mandated ALJ hearing.

> In the absence of an injunction staying recoupment *pending an ALJ hearing*, Med-Cert has no other adequate remedy because Defendants' choice to seek recoupment

from Med-Cert will cause Therefore, Med-Cert requests that this Court issue an order of mandamus *requiring Defendants to provide Med-Cert with a hearing before an ALJ and a decision from the ALJ within 90 days of the Court's order.*

(ECF No. 1, pgs. 34-35) (emphasis added in italics). Thus, the Complaint's factual allegations relate solely to the ALJ hearing. Furthermore, the Complaint specifically requests the following corresponding forms of relief:

> 1.  That the Court issue a Temporary Restraining Order and an injunction prohibiting the Defendants from recouping from Med-Cert's Medicare payments until such time as Med-Cert receives an *ALJ hearing and decision*;
>
> 2.  In the alternative, that the Court issue an order of mandamus requiring Defendants to provide Med-Cert with a *hearing before an ALJ and a decision from the ALJ within 90 days of the Court's order*;
>
> 3.  Enter Judgment in Plaintiff's favor;
>
> 4.  Award Plaintiffs costs as allowable by 28 U.S.C. § 1920, and attorneys' fees as allowable by statute, if any, including, for example, the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(l )(A) based upon a finding that the Defendants' position is not substantially justified; and,
>
> 5.  That the Court issue and award Plaintiff such other and further relief as the Court deems just and proper.

(ECF No. 1, pg. 35) (emphasis added in italics). Thus, as with the Complaint's factual allegations, the specific relief requested in the Complaint relates solely to the ALJ hearing.

> (ii)   Whether the Provision of an ALJ Hearing Moots Plaintiff's Alternative Claims

"It is well-settled, that mootness is a threshold jurisdictional inquiry." *Louisiana Env't Action Network v. U.S. E.P.A.*, 382 F.3d 575, 580 (5th Cir. 2004) (hereinafter, "*LEAN*") (citing *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988)). "In general, a claim becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *LEAN*, 382 F.3d at 581 (citing *Murphy v. Hunt*, 455 U.S. 478, 481, (1982) (per curiam)) (additional citations omitted). "If a dispute has been resolved or if it has evanesced because of

changed circumstances, including the passage of time, it is considered moot." *Am. Med. Ass'n v. Bowen*, 857 F.2d 267, 270 (5th Cir. 1988) (citing *Matter of S.L.E. Inc.*, 674 F.2d 359, 364 (5th Cir. 1982)). However, the Fifth Circuit "has long been careful to note an exception to the general principles of mootness in instances where some issues of a case have become moot but the case as a whole remains alive because other issues have not become moot." *LEAN*, 382 F.3d at 581 (citations and internal quotation marks omitted). Nonetheless, "where one claim has become moot and the pleadings are insufficient to determine whether the plaintiff is entitled to another remedy, the action should be dismissed as moot." *Powell v. McCormack*, 395 U.S. 486, 499 (1969). The Court concludes that Plaintiff's claims for relief—as pleaded in Plaintiff's Complaint—have been mooted by the undisputed occurrence of the ALJ hearing.[2]

The Court finds instructive the Supreme Court's decision in *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115 (1974). In *Super Tire*, the plaintiffs were the owners of manufacturing plants in New Jersey whose employees had gone on strike. 416 U.S. at 116-17. The striking employees received public assistance through state welfare programs, so the plaintiffs sued the state, alleging that the public assistance policy was null and void because it interfered with the federal labor policy of free collective bargaining. *Super Tire*, 416 U.S. at 118-19. In their complaint, the *Super Tire* plaintiffs sought (1) declaratory judgment that the regulations governing the assistance program were unlawful and (2) injunctive relief against the state welfare administrators from making public funds available to the striking employees. *Super Tire*, 416 U.S. at 119-20. The strike ended before the Parties tried the case, yet the district court reached the merits of the underlying dispute. *Super Tire*, 416 U.S. at 117.

---

[2] As will be discussed below, the Court construes Plaintiff's reorientation of its claims around the general deficiencies in the administrative appeals process and request for declaratory judgment in its Motion for Summary Judgment and accompanying Brief in Support as a request for leave to amend Plaintiff's pleadings. *See supra* III.A.2. The Court denies Plaintiff's constructive request for leave because such amendments would be futile. *See supra* III.A.3.

The Supreme Court held that the termination of the strike mooted the plaintiffs' claim for injunctive relief, but not their claim for declaratory relief, explaining that:

> The [intervening] union invites us to conclude that this controversy between the petitioners and the State became moot when the particular economic strike terminated upon execution of the new collective-bargaining agreement and the return of the strikers [to work before the case was tried.] **That conclusion, however, is appropriate with respect to only one aspect of this lawsuit, that is, the request for injunctive relief made in the context of official state action during the pendency of the strike.**
>
> **The petitioners here have sought, from the very beginning, declaratory relief as well as an injunction. Clearly the District Court had "the duty to decide the appropriateness** of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction." *Zwickler v. Koota*, 389 U.S. 241, 254, 88 S.Ct. 391, 399, 19 L.Ed.2d 444 (1967); *Roe v. Wade*, 410 U.S. 113, 166, 93 S.Ct. 705, 733, 35 L.Ed.2d 147 (1973); *Steffel v. Thompson*, 415 U.S. 468—469, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). **Thus, even though the case for an injunction dissolved with the subsequent settlement of the strike and the strikers' return to work,** *the parties to the principal controversy*, **that is, the corporate petitioners and the New Jersey officials,** *may still retain sufficient interests and injury as to justify the award of declaratory relief.*

*Super Tire*, 416 U.S. at 121-22 (emphasis added in bold and bold italics).

Here, Plaintiff's requested relief in the Complaint—(1) for an injunction prohibiting recoupment until Defendants provide an ALJ hearing and (2) in the alternative, for an order of mandamus requiring Defendants to provide an ALJ hearing within 90 days—have been mooted by the occurrence of the ALJ Hearing—ending the third-level "delay" that animated these claims as pled. As with the injunction at issue in *Super Tire*, the case for the injunctive and mandamus relief Plaintiff requested dissolved with the subsequent provision of the ALJ hearing at issue. *Super Tire*, 416, U.S. at 122; *see also City of Austin v. Kinder Morgan Texas Pipeline, LLC*, 528 F. Supp. 3d 670, 679-81 (W.D. Tex. 2021) (plaintiff's claim for injunctive and declaratory relief requesting a halt to the construction of a pipeline were moot because the construction was no longer on-going); *Sw. Airlines Co. v. Aircraft Mechanics Fraternal Ass'n*, No. 3:17-CV-0431-N, 2020 WL 1325224 (N.D. Tex. Mar. 20, 2020) (company's request for injunctive and declaratory relief

relating to a union's activities during a contentious collective bargaining process were moot because the company and the union reached a new collective bargaining agreement).

Plaintiff contends that its claims are not moot because they fall within the well-established exception to the mootness doctrine for matters that are "capable of repetition, yet evading review." (ECF No. 76, pg. 11) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). However, *Super Tire* is instructive on this contention. The Supreme Court held that the plaintiff's claim for declaratory relief was not moot, invoking the "capable of repetition, yet evading review" exception, because the declaratory relief originally requested was not tied directly to the strike at issue, but rather attacked the validity of the public assistance program generally. *See Super Tire*, 416 U.S. at 118-19. The Supreme Court concluded that the claim for declaratory relief was not moot because the challenged policy was "not contingent, [had] not evaporated, and, by its continuing and brooding presence, cast[] what may well [have been] a substantial adverse effect on the interest of the petitioning parties." *Super Tire*, 416 U.S. at 122. Plaintiff argues that this is exactly what is happening here with Defendants' alleged immense backlog of Medicare appeals. (*See* ECF No. 76, pgs. 11-12). However, there is a key difference between the case here and the case before the Supreme Court in *Super Tire*—that is, the plaintiffs in *Super Tire*, unlike Plaintiff here, "sought, *from the very beginning*, declaratory relief as well as an injunction." *Super Tire*, 416 U.S. at 121 (emphasis added).

The specific relief Plaintiff requested in its Complaint—injunctive relief and an order of mandamus relating *solely* to the delay at the third level of the appeals process—is moot. The case for those claims dissolved once Plaintiff received its requested ALJ hearing. *See Super* Tire¸ 416 U.S. at 121-22. Unlike the plaintiffs in *Super Tire*, Plaintiff has not, from the very beginning, sought declaratory relief challenging governmental policies and practices generally. (*See generally*

ECF No. 1). Only now, at the summary-judgment stage, does Plaintiff (1) frame its complaints about the inadequacy of the administrative appeal process in general and (2) recast its claim for injunctive relief as a claim for declaratory relief. As discussed below, the Court construes this reframing as request for leave to amend, which is denied. Nevertheless, under these circumstances and pleadings, the Court must conclude that Plaintiff's claims for alternative relief, as pled in Plaintiff's Complaint, are moot and non-justiciable. *See Powell*, 395 U.S. at 499.

2.      *The Court Construes Plaintiff's Motion for Summary Judgment as a Request for Leave to Amend.*

In the time since the Fifth Circuit remanded this case for consideration of Plaintiff's alternative claims for relief, Plaintiff has received its ALJ hearing and decision. After the ALJ issued an unfavorable decision, Plaintiff filed a request for review by the Appeals Council. As of the filing of Plaintiff's Motion for Summary Judgment and the issuance of this Memorandum Opinion and Order, Plaintiff has not received the requested Appeals Council review.

Even though Plaintiff has received the ALJ hearing it requested in its Complaint, Plaintiff continues to seek summary judgment on its alternative claims for relief. Plaintiff's Motion for Summary Judgment recasts its requested relief and refocuses its arguments from the third-level ALJ hearing to the delay in the fourth level of the administrative appeals process. (*See* ECF No. 72, pg. 9) ("The request has not been at the fourth level of the administrative appeals process for 179 days. The same delay at the ALJ has made its way to the fourth level. Defendant has once again failed to process the appeal pursuant to 42 U.S.C. § 1395ff.") (citations to the record omitted). As opposed to its request for injunctive and mandamus relief in the Complaint, which focused specifically on the third level of the administrative appeals process, Plaintiff's Motion for Summary Judgment requests relief related to deficiencies in the administrative appeals process, writ large. Plaintiff also recasts its request for an injunction in terms of declaratory relief.

Specifically, Plaintiff's Motion for Summary Judgment seeks:

1.   **A declaratory judgment** that Defendant has acted *ultra vires* in **failing to provide an administrative appeals process pursuant to 42 U.S.C. § 1395ff** and yet imposing recoupment to collect the Medicare overpayment.

2.   **A declaratory judgment granting Plaintiff's request for permanent injunction**. Wherefore, Plaintiff respectfully requests that the Court should **grant Plaintiff's motion for summary judgment and request for preliminary injunction**.

3.   In the alternative, the issuance of an order of mandamus compelling Defendants to **properly adjudicate its administrative appeal pursuant to 42 U.S.C. § 1395ff.**

(ECF No. 71, pg. 2) (emphasis added).

Plaintiff's references to declaratory judgment in its Motion for Summary Judgment are the first and only time Plaintiff has asserted such claims in this case. (*Compare e.g.*, ECF No. 72, *with* ECF No. 1). Moreover, Plaintiff bases the relief requested in the Motion for Summary Judgment on delays at the fourth level of the administrative appeals process because it has already received the relief it requested—the ALJ hearing—in its Complaint. Defendants argue that, by raising factual allegations relating to the fourth-level delay in the Motion for Summary Judgment that were not present in the Complaint, Plaintiff has attempted to amend its pleadings through its summary-judgment motion. The Court agrees.

It is well-settled that "[a] claim which is not raised in the complaint but, rather, is raised only in opposition to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005); *see also Pittman v. U.S. Bank NA*, 840 F. App'x 788, 789–90 (5th Cir. 2021) ("Our precedent precludes a plaintiff from advancing a new claim or reframing a previously presented one in response to a motion for summary judgment.") (citing *Cutrera*, 429 F.3d at 113); *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012) (district court did not abuse its discretion

in declining to consider "new factual allegations and theories of liability not present in the pleadings") (citing *Cutrera*, 429 F.3d at 113) (additional citations omitted). Plaintiff argues that *Cutrera* does not control here because: (1) the factual information related to the fourth-level delay were included in the Motion for Summary Judgment, not a response to a summary-judgment motion; and (2) the factual information are just "facts" and not a "new claim." (ECF No. 76, pg. 12). Both of Plaintiff's arguments are unavailing.

First, while Plaintiff's new factual allegations and reframed claims for declaratory judgment were in the Motion for Summary Judgment, rather than a response to a summary-judgment motion, the Court finds *Cutrera* to be persuasive and believes that it is inappropriate for parties to assert new factual allegations and claims in their motions for summary judgment. *See U.S. ex rel. DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012) ("[T]he district court did not err in denying DeKort's motion for partial summary judgment because he attempted to raise a new claim, not asserted in his fifth amended complaint."); *see also Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1314–15 (11th Cir. 2004) (Plaintiffs may not "raise new claims at the summary judgment stage. [. . .] At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)."). Second, the prohibition on asserting new claims in opposition to summary-judgment motions extends the assertion of new factual allegations and theories of liability as well. *See De Franceschi*, 477 F. App'x at 204. Finally, Plaintiff's Motion for Summary Judgment does not simply include new factual allegation that are not present in the Complaint; Plaintiff also recasts its claim for injunctive relief in the form of a claim for declaratory relief. (*Compare* ECF No. 1, pg. 35 *with* ECF No. 71, pg. 2). Notwithstanding, the injury for which Plaintiff now complains at the summary judgment stage—regarding the fourth level of the administrative

appeals process—could not have occurred at the time of Plaintiff's Complaint, as the third-level ALJ Hearing condition precedent had not occurred at that time. Thus, despite Plaintiff's assertions to the contrary, Plaintiff has demonstrably asserted a new claim at the summary-judgment stage.

In the Fifth Circuit, "when a claim is raised for the first time in a response to a summary judgment motion, the district court should construe that claim as a motion to amend the complaint under Federal Rule of Civil Procedure 15(a)." *Riley v. Sch. Bd. Union Par.*, 379 F. App'x 335, 341 (5th Cir. 2010) (citing *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 989 n. 2 (5th Cir. 2008); *Sherman v. Hallbauer*, 455 F.2d 1236, 1242 (5th Cir. 1972)). For the reasons discussed above, the Court believes this maxim extends to new factual allegations, theories of liability, and claims asserted for the first time in a motion for summary judgment. *Riley*, 379 F. App'x at 341.[3] "Rule 15(a) applies where plaintiffs 'expressly requested' to amend even though their request 'was not contained in a properly captioned motion paper.'" *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (5th Cir.1988)).

Plaintiff has not "expressly requested" leave to amend its pleadings either in a properly captions motion paper or in its Motion for Summary Judgment. However, Plaintiff has asserted a new factual basis for relief—the fourth-level delay—and new claims—those for declaratory relief—in its summary-judgment motion and accompanying brief. Accordingly, the Court construes the Motion for Summary Judgment and Brief in Support as a motion for leave to amend the Complaint under Rule 15(a). *See Riley*, 379 F. App'x at 341.

---

[3] The Court notes that in the motion to dismiss context, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

3.      *The Court Denies Leave to Amend Because Amendment Would be Futile.*

"Under Rule 15(a), 'leave to amend shall be freely given when justice so requires,' and should be granted absent some justification for refusal." *U.S. ex rel. Willard*, 336 F.3d at 386 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). District courts are "entrusted with the discretion to grant or deny a motion to amend[.]" *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). In deciding whether to grant or deny a motion to amend, the Court "may consider a variety of factors including 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment.'" *Marucci Sports*, 751 F.3d at 378 (internal citation omitted); *see also, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962) (enumerating the same). Courts may also deny leave to amend if the proposed amendments "would fundamentally alter the nature of the case." *Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004) (citing *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246 n. 2 (5th Cir. 1997)).

For the reasons discussed below, the Court denies Plaintiff's constructive request for leave to amend. Plaintiff has attempted to amend its Complaint at the summary-judgment stage by: (1) reframing its allegations around (a) the fourth-level delay and (b) deficiencies in the Medicare appeals process writ-large; and (2) recasting its claim for injunctive relief as claims for declaratory relief. The Court concludes that these amendments would be futile. Because Plaintiff's claims as pleaded in its Complaint are now moot and the Court denies Plaintiff the opportunity to amend its Complaint at this late stage, the Court concludes that Plaintiff's claims must be dismissed as non-justiciable.

(i)    <u>Plaintiff's Requested Injunction</u>

Plaintiff's request regarding injunctive relief at the summary-judgment stage is unclear. In its Motion for Summary Judgment, Plaintiff requests: (1) declaratory judgment that Defendants acted *ultra vires* in "failing to provide an administrative appeals process pursuant to 42 U.S.C. § 1395ff" yet recouping the overpayment amount; and (2) "declaratory judgment granting Plaintiff's request for *permanent* injunction" and "grant Plaintiff's motion for summary judgment and request for *preliminary* injunction." (ECF No. 71, pg. 2) (emphasis added). However, in its Brief in Support, Plaintiff argues that it is entitled to a permanent injunction based on (1) its *ultra vires* claim and (2) its APA claim. (ECF No. 72, pgs. 11-18). Despite Plaintiff's attempt to recast its claim as one for declaratory relief, the Court treats these as a request for injunctive relief based on the *ultra vires* claim and the APA claim.

The elements of a permanent injunction are essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987). The party seeking a permanent injunction must show: (1) success on the merits, (2) the failure to grant the injunction will result in irreparable injury, (3) the injury outweighs any damage that the injunction will cause to the opposing party, and (4) the injunction will not disserve the public interest. *United Motorcoach Ass'n v. City of Austin*, 851 F.3d 489, 492–93 (5th Cir. 2017); *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006).

Plaintiff's Motion for Summary Judgment is unclear as to whether Plaintiff is seeking a preliminary injunction or a permanent injunction. Regardless of whether Plaintiff seeks preliminary or permanent injunctive relief, the Court concludes Plaintiff's proposed amendment to refocus the *ultra vires* and APA claims on the fourth-level delay would be futile. Specifically, the Court concludes that, even if the Court were to allow Plaintiff to amend its pleadings through

its Motion for Summary Judgment, (1) Plaintiff is not entitled to relief on its *ultra vires* claim, and (2) the Court lacks jurisdiction over Plaintiff's APA claim.

### (a)   Plaintiff Would Not be Entitled to Relief on its *Ultra Vires* Claim Even If the Court Allowed Plaintiff's Amendment.

In its summary-judgment briefing, Plaintiff argues that it is entitled to injunctive relief because Defendants acted *ultra vires* in recouping the overpayment amount while the Appeals Council has not provided the requested review within the time required. (ECF No. 72, pgs. 12-13). (ECF No. 72, pg. 12) (citing 42 C.F.R. §§ 405.1100-405.1140). Defendants argue that—even if the Court were to consider the merits of Plaintiff's *ultra vires* claim with respect to the fourth-level delay—the Court should grant Defendants summary judgment and dismiss that claim. In light of controlling precedent discussed hereunder, the Court concludes that allowing Plaintiff to amend its pleadings to refocus its *ultra vires* claim on the delayed decision of the Appeals Council would be futile because Defendants have not acted *ultra vires* in recouping overpayments without providing a timely Appeals Council decision.

The Fifth Circuit has explained that *ultra vires* claims relating to recoupment of overpayment amounts after the second level of the administrative review process fail, even if there have been delays in the appeals process. *See Sahara*, 975 F.3d at 533-34. In *Sahara Health Care, Incorporated v. Azar*, the Fifth Circuit held that a provider failed to state a claim for *ultra vires* actions where the provider alleged that HHS and CMS violated federal law by "initiat[ing] recoupment of [the provider's] current payments even though [they] failed to provide an administrative appeal in accordance with 42 U.S.C. § 1395ff." *Sahara*, 975 F.3d at 533. There, the provider sued for injunctive relief preventing HHS and CMS from recouping payments without providing a timely ALJ hearing. *Sahara*, 975 F.3d at 525. The Fifth Circuit explained:

The statute entitles a provider to two steps of administrative review before the

government recoups funds. *See* 42 U.S.C. § 1395ff(a)(3) (step one); 42 U.S.C. § 1395ff(b)(1)(A) (step two). Sahara received that review. The statute does not prohibit recoupment after step two. Cf. 42 U.S.C. § 1395ddd(f)(2)(A) (prohibiting recoupment during steps one and two); 42 C.F.R. § 405.379(d)(4)–(5) (authorizing recoupment after step two). Congress afforded a provider who has not received a timely ALJ hearing the right to escalate to the Appeals [Council]. 42 U.S.C. § 1395ff(d)(3)(A). Sahara rejected that remedy. The Secretary and the Administrator acted within their statutory limits and we affirm the district court's dismissal of Sahara's *ultra vires* claim.

Sahara's out-of-circuit authority does not save it. It relies on a D.C. Circuit case that, in dicta, remarked that "nothing suggests that Congress intended escalation to serve as an adequate or exclusive remedy where, as here, a systemic failure causes virtually all appeals to be decided well after the statutory deadlines." *See [Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 191 (D.C. Cir. 2016)]. But *American Hospital* was a very unusual case. Hospitals sought to mandamus the Secretary of HHS to comply with the 90-day hearing requirement and to solve the problem of the multi-year backlog. *Id.* at 185. The court held that mandamus jurisdiction existed, but that issuance of the writ was premature. It told Congress that "given the unique circumstances of this case, the clarity of the statutory duty likely will require issuance of the writ if the political branches have failed to make meaningful progress within a reasonable period of time—say, the close of the next full appropriations cycle." *Id.* at 193.

Congress heeded that warning and appropriated $182.3 million to address the appeals backlog, "more than doubl[ing] [the agency's] FY 2017 disposition capacity." *Am. Hosp. Ass'n v. Azar*, No. 14-cv-851, 2018 WL 5723141, at *2 (D.D.C. Nov. 1, 2018). As a result, the agency is under a mandamus order to eliminate the backlog by the end of fiscal year 2022. *See id.* at *3. The "unique circumstances" that justified the American Hospital decision are no longer present. See *Am. Hosp. Ass'n*, 812 F.3d at 193. The case is inapposite to Sahara's present claim.

Sahara fails to state a claim for *ultra vires* actions. The district court did not err by denying injunctive relief on that ground.

*Sahara*, 975 F.3d at 533-34.

The Court concludes that the same reasoning in *Sahara* applies here. Plaintiff received both the first step (redetermination) and the second step (reconsideration) of the administrative appeals process before recoupment began. (*See* ECF No. 1, pgs. 23-26). Plaintiff, like the provider in *Sahara*, had the option to escalate its appeal when it did not receive an ALJ hearing within 90 days. *See* 42 U.S.C. § 1395ff(d)(3)(A). Plaintiff also has the option to escalate its appeal to federal

court now that it has not received a decision from the Appeals Council within 90 days. *See* 42 U.S.C. § 1395ff(d)(3)(B). Congress has chosen escalation as the prescribed remedy for undue delays in the administrative appeals process. *See Sahara*, 975 F.3d at 533 ("Sahara rejected that remedy. The Secretary and the Administrator acted within their statutory limits and we affirm the district court's dismissal of Sahara's *ultra vires* claim.").[4] Here, Plaintiff has rejected that prescribed remedy. In light of the Fifth Circuit's holding that a similarly situated provider was unable to state a claim for *ultra vires* actions, the Court concludes that Plaintiff is not entitled to relief on its *ultra vires* claim.[5] As such, the Court denies Plaintiff leave to amend its pleadings to reorient this case around the delays at the fourth level of the administrative appeals process because such amendment would be futile.

> **(b)     The Court Would Lack Subject-Matter Jurisdiction over Plaintiff's APA Claim Even If the Court Allowed Plaintiff's Amendment.**

In its summary judgment briefing, Plaintiff argues that it is entitled to a "preservation of status or rights" injunction under the APA preventing Defendants from recouping the alleged overpayments because it has not received a decision from the Appeals Council within the required

---

[4] The *Sahara* court further explained:

> Our only sister circuit to face this question reached the same conclusion. The Fourth Circuit recently vacated an injunction that barred "HHS from pursuing recoupment efforts until [the plaintiff-provider] could challenge the recoupment amounts in a hearing before an ALJ." *See Accident, Injury & Rehab.*, 943 F.3d at 197. The court discussed two fatal flaws to the plaintiff's theory. *First, the provider was myopically focused on the tree of the hearing while it ignored the forest of the full comprehensive five-step scheme of procedural protections. See id.* at 204. *Second, the provider, by seeking an injunction instead of the statutorily prescribed escalation procedures, could not then "complain that its election denie[d] it due process." Id.* We agree on both points. The step-three hearing is just one part of a procedurally protective whole. And Sahara cannot complain about lacking due process when the privation (foregoing escalation and judicial review) was its own choice.

*Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 532–33 (5th Cir. 2020) (emphasis added).

[5] For the same reasons, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's *ultra vires* claims. *See infra* Section III.C.

---

timeframe. (ECF No. 72, pgs. 13-15). Defendants argue that, even if Plaintiff's APA claim is not moot, this Court does not have subject-matter jurisdiction over the APA claim because: (1) "the APA does not provide an independent basis for jurisdiction;" (2) the APA [] does not provide a mechanism to override the jurisdictional requirements of 42 U.S.C. § 405(g);" and (3) "there is no final agency action in this case under the APA." (ECF No. 75, pg. 25). The Court agrees with Defendants and concludes that allowing Plaintiff to amend its pleadings to refocus its APA claim on the fourth level of the administrative appeals process would be futile because the Court lacks subject-matter jurisdiction over the APA claim.

Plaintiff asserts that the Court has jurisdiction over its APA pursuant to one of the provisions of that law—5 U.S.C. § 705. (*See* ECF No. 1, pgs. 16, 33). However, as Defendants correctly point out, this provision of the APA simply indicates that courts may take action to "postpone the effective date of an agency action or to preserve status or rights pending the conclusion of the review proceedings." 5 U.S.C. § 705. In fact, it is well-settled that the APA "does not create an independent grant of jurisdiction to bring suit." *Stockman v. Fed. Election Comm'n*, 138 F. 3d 144, 151 n. 13 (5th Cir. 1998) (citing *Califano v. Sanders*, 430 U.S. 99, 107 (1977) (explaining that "the APA does not afford an implied grant of subject[-]matter jurisdiction permitting judicial review of agency action")). Accordingly, the Court's subject-matter jurisdiction must arise from Plaintiff's alternative jurisdictional arguments—that is, a provision of the Social Security Act, 42 U.S.C. § 405(g), and the provision of the Medicare Act which makes 42 U.S.C. § 405(g) applicable to Medicare, 42 U.S.C. § 1395ff(b)(1)(A).[6]

"The Medicare Act severely restricts the authority of federal courts by requiring 'virtually all legal attacks' under the Act be brought through the agency." *Physician Hosps. of Am. v.*

---

[6] Medicare cases usually are excluded from the general grant of federal-question jurisdiction in 28 U.S.C. § 1331 absent exhaustion of the agency appeals. *Fam. Rehab., Inc. v. Azar*, 886 F.3d 496, 501 n. 4 (5th Cir. 2018).

*Sebelius*, 691 F.3d 649 (5th Cir. 2012) (quoting *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000)). Under 42 U.S.C. § 405 (h), § 405(g) is the sole avenue for judicial review for all "claims arising under" the Medicare Act, even to the exclusion of federal-question jurisdiction under 28 U.S.C. 1331. *Heckler v. Ringer*, 466 U.S. 602, 614-15 (1984) (citations omitted). Accordingly, federal courts only have jurisdiction over "final decision[s]" of HHS when dealing with claims "arising under" the Medicare Act. *Family Rehab., Inc. v. Azar*, 886 F.3d 496, 500 (5th Cir. 2018). It is undisputed that Plaintiff's claims arise under the Medicare Act.

"Judicial review for claims 'arising under' the Medicare Act normally becomes available only after a party first presents the claim to the Secretary [of the HHS] *and* receives a final decision." *Supreme Home Health Servs., Inc. v. Azar*, 380 F. Supp. 3d 533, 547 (W.D. La. 2019) (citing *Physician Hosps. of Am.*, 691 F.3d at 653), *aff'd*, 812 F. App'x 229 (5th Cir. 2020). In other words:

> [J]urisdiction under section 405(g) is determined under a two prong test. First, there must have been a presentment to the Secretary . . . . This element can never be waived and no decision of any type can be rendered if this requirement is not satisfied . . . . Second, *the claimant must have exhausted his administrative review*.

*Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir.1999) (emphasis added) (citing *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)). It is undisputed that Plaintiff has presented its claims to the Secretary by availing itself of the administrative appeals process. *See Supreme Home Health Servs.*, 380 F. Supp. At 547 ("[T]he court readily finds that Supreme presented its claim to the Secretary, if not by initiating the administrative appeals process, then by requesting review before an ALJ.").

Defendants contend, however, that Plaintiff has failed to satisfy the second of § 405(g)'s requirements—the exhaustion prong—because it has not obtained a final decision. (ECF No. 75, pgs. 27-28). With respect to the exhaustion prong, the Fifth Circuit has explained:

[A] provider may come to district court only after either (1) *satisfying all four stages of administrative appeal*, i.e., after the [Appeals] Council has rendered a decision, or (2) *after the provider has escalated the claim to the [Appeals] Council and the [Appeals] Council acts or fails to act within 180 days*. [42 U.S.C.] §§ 405(g), (h); 42 C.F.R. § 405.1132.

*Family Rehab.*, 886 F.3d 496, 500-01 (emphasis added). It is undisputed that neither of these conditions under the exhaustion prong has occurred here. Therefore, Plaintiff must establish that it meets an exception to exhaustion.

The Supreme Court and the Fifth Circuit have three recognized exceptions to § 405(g)'s exhaustion requirement: "(1) the *Eldridge* collateral-claim exception under § 405(g); (2) the preclusion-of-judicial-review exception under 28 U.S.C. § 1331; and (3) mandamus jurisdiction under 28 U.S.C. § 1361." *Adams EMS, Inc. v. Azar*, No. CV H-18-1443, 2018 WL 5264244, at *5 (S.D. Tex. Oct. 23, 2018) (citing *Family Rehab.*, 886 F.3d at 501 (citing, in turn, *Eldridge*, 424 U.S. at 326-32; *Ill. Council*, 529 U.S. at 19; *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 764 (5th Cir. 2011)). The Court concludes that, even if Plaintiff were allowed to amend its APA claim in the manner put forth in the Motion for Summary Judgment and Brief in Support, the Court would not have subject-matter jurisdiction over the APA claim because none of the three exceptions to the requirements of § 405(g) apply.

*(1)   The Collateral Claim Exception*

In its Complaint, Plaintiff invokes the "collateral-claim exception" to § 405(g)'s channeling requirement, under which courts have jurisdiction "over claims (a) that are 'entirely collateral' to a substantive agency decision and (b) for which 'full relief cannot be obtained at a post[-]deprivation hearing'" *Family Rehab.*, 886 F.3d at 501 (quoting *Eldridge*, 424 U.S. at 330-32); (ECF No. 1, pgs. 16-17; ECF No. 77, pg. 15). In *Family Rehab.*, the Fifth Circuit distilled the first prong of this exception into two maxims. First, "[i]f the court must examine the merits of the underlying dispute, delve into the statutes and regulations, or make independent judgments as to

plaintiffs' eligibility under a statute," or "if plaintiffs request relief that is proper under the organic statute—by requesting that benefits or a provider status be *permanently* reinstated," then the claims are not collateral. *Family Rehab.*, 886 F.3d at 503 (emphasis in original) (citing and discussing *Ringer*, 466 U.S. at 610, 614; *Affiliated Prof'l Home Health*, 164 F.3d at 284-86). Second, if the claims "sound only in constitutional or procedural law" and "request that benefits be maintained temporarily until the agency follows the statutorily or required procedures," they are collateral. *Family Rehab.*, 886 F.3d at 503 (citing and discussing *Eldridge*, 424 U.S. at 319, 324-25, 330-32; *Bowen v. City of New York*, 476 U.S. 467, 473-74, 483 (1986)). Under the second prong of the exception, plaintiffs must raise "'at least a colorable claim' that erroneous recoupment will 'damage [them] in a way not recompensable through retroactive payments.'" *Family Rehab.*, 886 F.3d at 504 (quoting *Eldridge*, 424 U.S. at 331).

The Court concludes that Plaintiff's APA claim is not collateral. On this point, the Court finds the decision of a court in the Southern District of Texas to be persuasive. In *Sahara Health Care, Inc. v. Azar*, 349 F. Supp. 3d 555 (S.D. Tex. 2018), *aff'd*, 975 F.3d 523 (5th Cir. 2020), the district court considered a case very similar to this one: a Medicare provider facing recoupment of Medicare overpayments did not receive an ALJ hearing within 90 days, so it sued HHS and CMS, asserting (1) an *ultra vires* claim, (2) a procedural due process claim, and (3) a claim for a "preservation of status of rights" injunction under the APA. The *Sahara* district court explained:

> By nature, *Plaintiff's APA claim is not collateral because it requires the Court to delve into the statute and regulations, and to make independent judgments as to Plaintiff's eligibility under the statute. The provision cited relates to Plaintiff's eligibility and status under the statute by Plaintiff's "preservation of status" and assertion of rights under the APA.* It should be noted the Fifth Circuit in *Family Rehab.* did not consider Family Rehab's APA claim because Family Rehab conceded its APA claim was not collateral. [*Family Rehab.*, 886 F.3d at 501 n. 6.] Finally, since jurisdiction and an adequate remedy under § 405(g) exists for Plaintiff [(continuation through the administrative appeals process)], the Court lacks jurisdiction to review Plaintiff's APA claim.

*Sahara*, 349 F. Supp. 3d at 566 (emphasis added).

The Court adopts the reasoning in *Sahara* and the numerous other courts in this circuit that have made similar determinations. *See, e.g.*, *Supreme Home Health*, 380 F. Supp. 3d at 548-551 (Finding that, prior to the Fifth Circuit's ruling on the viability of procedural due process and *ultra vires* claims in *Sahara*, 975 F.3d 523, those claims were collateral, but holding that the court lacked jurisdiction over the APA claim because "the APA does not provide a mechanism to override § 405(h)'s jurisdictional requirements and does not authorize district courts subject matter to issue Medicare injunction suits") (citing *Sahara*, 349 F. Supp. 3d at 565); *Arthritis Treatment of Tex., PLLC v. Azar*, 3:16-cv-6592664, at *5-6 (N.D. Tex. Dec. 14, 2018) (finding that it lacked jurisdiction over a provider's APA claim challenging the amount of an alleged overpayment); *Tex. Med. Enterprises, Inc. v. Seblius*, No. 9:13-cv-27, at *4 (E.D. Tex. Jun. 24, 2013) (finding that it lacked APA jurisdiction over a provider's APA claim challenging the terms of repayment of Medicare overpayments); *Citadel Healthcare Services Inc. v. Sebelius*, 3:10-cv-1077-BH, 2010 WL 5101389, at *4-5 (N.D. Tex. Dec. 8, 2010) ("Although Plaintiff has framed the claim in constitutional terms by alleging a denial of appeal rights and overpayment notice, it essentially seeks to prevent improper recoupment and suspension of its Medicare payments, which is clearly an administrative remedy."). Accordingly, the Court concludes that, even if Plaintiff were allowed to amend its Complaint through its Motion for Summary Judgment, Plaintiff's APA claim would not satisfy the collateral-claim exception to § 405(g)'s exhaustion requirement.

### (2)    *The Preclusion of Review Exception*

Plaintiff also invokes the "preclusion-of-judicial-review exception." "In *Shalala v. Illinois Council on Long Term Care, Inc.*, the Supreme Court recognized that a court may exercise jurisdiction over Medicare claims under 28 U.S.C. § 1331 if administrative obstacles 'would not simply channel review through [HHS], but would mean no review at all.'" *Supreme Home Health*,

380 F. Supp. 3d at 551 (citing *Adams EMS*, 2018 WL 5264244, at *6 (citing, in turn, *Ill. Council*, 529 U.S. at 15)). However, "this exception is narrow and applies only when channeling a claim through [HHS] would result in the '*complete* preclusion of judicial review.'" *Family Rehab.*, 886 F.3d at 504-05 (emphasis in original) (quoting *Ill. Council*, 529 U.S. at 23). Thus, a provider "must show that bringing its claim administratively is 'a legal impossibility,' or that it faces 'a serious practical roadblock to having [its] claims reviewed in any capacity, administratively or judicially.'" *Family Rehab.*, 886 F.3d at 505 (quoting *Physician Hosps.*, 691 F.3d at 655, 659).

In support of Plaintiff's invocation of this exception, Plaintiff argues that it "has suffered and has been harmed by a *substantial* delay in multiple stages of an appeal process that should take less than a year. The challenging of this delay is not something that can be done when a 'final agency decision' has been issued." (ECF No. 76, pg. 16). Plaintiff's argument fails for two reasons. First, Plaintiff has not invoked 28 U.S.C. § 1331 as a basis for subject-matter jurisdiction over its APA claim, or indeed over any of its claims. (*See* ECF No. 1, pgs. 16-18). Second, even if it had, the Fifth Circuit in *Family Rehab.* specifically rejected this sort of argument in the context of the preclusion of review exception, explaining:

> Family Rehab alleges that bringing its claim administratively faces serious obstacles from the colossal backlog in Medicare appeals and HHS's ostensibly Sisyphean attempts to combat the problem. **But it is not enough to assert that judicial review will be delayed and that Family Rehab itself will be prejudiced by that delay.** Indeed, we have required channeling so long as "there potentially were other parties with an interest and a right to seek administrative review." Given the thousands of ongoing Medicare appeals—including by providers who have come already to our circuit—there is no dearth of third parties with both the incentive and capacity to challenge the timeliness of ALJ hearings. Jurisdiction is not available under § 1331.

*Family Rehab.*, 886 F.3d at 505 (footnotes omitted); *see also Supreme Home Health*, 380 F. Supp. 3d at 551 (the "colossal backlog in Medicare appeals" does not suffice to render "judicial review completely unavailable") (citing *Family Rehab.*, 886 F. 3d at 505); *Arthritis Treatment of Tex.*,

2018 WL 6592664, at *6 (finding the preclusion of review exception did not apply). Accordingly, the Court concludes that, even if Plaintiff were allowed to amend its pleadings, the Plaintiff's APA claim would not satisfy the preclusion of review exception.

(3)     *Mandamus Jurisdiction*

Plaintiff does not explicitly invoke the mandamus jurisdiction exception to the channeling requirements of § 405 in arguing that the Court has jurisdiction over the APA claim. However, because Plaintiff invokes mandamus jurisdiction as the basis for the Court's jurisdiction over the claim for mandamus relief, the Court addresses the mandamus exception to § 405 out of an abundance of caution.

"Under the Mandamus and Venue Act, 28 U.S.C. § 1361, a district court has 'jurisdiction [over] any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.'" *Wolcott*, 635 F.3d at 766 (quoting 28 U.S.C. § 1361). Section 405(h) "does not preclude § 1361 jurisdiction to review otherwise unreviewable procedural issues." *Wolcott*, 635 F.3d at 766. Section 1361, however, "does not grant jurisdiction to consider actions asking for other types of relief—such as injunctive relief." *Wolcott*, 635 F.3d at 766. In *Wolcott*, the Fifth Circuit held that § 1361 could not serve as the basis for jurisdiction over a claim for injunctive relief because:

> An injunction is a remedy to restrain the doing of injurious acts or to require the undoing of injurious acts and the restoration of the status quo, whereas mandamus commands the performance of a particular duty that rests on the defendant or respondent, by operation of law or because of official status.

*Wolcott*, 635 F.3d at 766 (citation and internal quotation marks omitted). Accordingly, the Court concludes that the mandamus exception does not apply to Plaintiff's request for injunctive relief under the APA. *See Supreme Home Health*, 380 F. Supp. 3d at 551 (finding that the mandamus jurisdiction exception did not apply to plaintiff's claim for injunctive relief prohibiting HHS and

CMS from recouping Medicare overpayments while plaintiff waited for their ALJ hearing).

In sum, the Court concludes that, even if Plaintiff were allowed to amend its pleadings through its Motion for Summary Judgment, such amendment would be futile with respect to the APA claim because the Court lacks subject-matter jurisdiction over that claim, and the claim does not satisfy any of the established exceptions to § 405(g)'s exhaustion requirement.

(ii)     <u>Plaintiff's Requested Order of Mandamus</u>

Finally, the Court turns to Plaintiff's request for an order of mandamus. As noted above, Plaintiff's Complaint requests, in the alternative to injunctive relief, "an order of mandamus *requiring Defendants to provide Med-Cert with a hearing before an ALJ and a decision from the ALJ.*" (ECF No. 1, pg. 35) (emphasis added). However, in its Motion for Summary Judgment, Plaintiff requests different relief with respect to its mandamus claim—that is, "the issuance of an order of mandamus compelling Defendants to *properly adjudicate its administrative appeal pursuant to 42 U.S.C. § 1395ff.*" (ECF No. 71, pg. 2) (emphasis added). Defendants argue that, even if Plaintiff's claim for mandamus relief is not moot, Plaintiff cannot establish that it is entitled to this "drastic remedy." (ECF No. 75, pg. 29). The Court concludes that allowing Plaintiff to amend its mandamus claim to attack the general inadequacy of the administrative appeals process would be futile because, even if such amendment were to be allowed, Plaintiff has not established that it is entitled to mandamus relief.

"Mandamus may only issue when (1) the plaintiff has a clear right to relief, (2) the defendant has a clear duty to act, and (3) no other adequate remedy exists." *Wolcott*, 635 F.3d at 768. "The third element requires the exhaustion of any adequate administrative remedy before a court may issue mandamus." *Wolcott*, 635 F.3d at 768. "An alternative remedy, including an administrative remedy, is adequate if it is capable of affording full relief as to the very subject

matter in question." *Wolcott*, 635 F.3d at 768. "Even when a court finds that all three elements are satisfied, the decision to grant or deny the writ remains within the court's discretion because of the extraordinary nature of that remedy." *Wolcott*, 635 F.3d at 768 (citing *United States v. Denson*, 603 F.2d 1143, 1146 (5th Cir. 1979)).  The Court concludes that, even if Plaintiff were allowed to amend its claims, Plaintiff would not be entitled to mandamus relief because it cannot establish that: (1) it has a clear and indisputable right to relief or (2) no other adequate remedy exists.

Plaintiff contends that it has a clear and undisputable right to receive its requested review from the Appeals Council within 90 days. In support of its argument, Plaintiff focuses on the mandatory language of the Medicare Act and the specified timeframes the Act sets. (*See* ECF No. 72, pgs. 12, 22); *see* 42 U.S.C. § 1395ff(d)(2)(A).[7] However, as has been discussed above, providers may "escalate" to federal court for judicial review of the underlying recoupment determination if the Appeals Council does not make its decision on the request for review within 90 days. *See* 42 U.S.C. § 1395ff(d)(3)(B) ("In the case of failure by the [Appeals Council] to render a decision by the end of the period described in [§ 1395ff(d)(2)], the party requesting the hearing ***may seek judicial review***¸ notwithstanding any requirements for a hearing for the purposes of the party's right to such judicial review."); *Sahara*, 975 F.3d at 526.

Thus, "Congress has specifically contemplated [the] possibility" that the Appeals Council cannot accomplish the task of rendering a decision within the 90-day timeframe and "provided a different remedy as part of its comprehensive statutory scheme." *Infinity Healthcare Servs., Inc. v. Azar*, 349 F. Supp. 3d 587, 602 (S.D. Tex. 2018). In *Cumberland County Hospital System, Inc. v. Burwell*, 816 F.3d 48 (4th Cir. 2016), the Fourth Circuit addressed a similar claim for mandamus

---

[7] The Appeals Council "***shall*** conduct and conclude a review of the decision [of the ALJ] and make a decision or remand the case to the [ALJ] for reconsideration ***by not later than the end of the 90-day period beginning on the date a request for review has been filed.***" 42 U.S.C. § 1395ff(d)(2)(A) (emphasis added).

relief to the one before the Court here. There, a Medicare provider did not receive an ALJ hearing within the required 90-day timeframe due to the immense administrative backlog plaguing the Medical appeals process and sued HHS seeking an order of mandamus compelling the agency to immediately adjudicate its appeal. *Cumberland Cnty. Hosp. Sys.*, 816 F.3d at 49-50. The Fourth Circuit affirmed the district court's dismissal of the mandamus claim, explaining:

> While the [Medicare] statute imposes deadlines for completion at each step of the process, it also anticipates that the deadlines may not be met and thus gives the healthcare provider the option of bypassing each step and escalating the claim to the next level, ultimately reaching judicial review by a United States district court within a relatively prompt time.

*Cumberland Cnty. Hosp. Sys., Inc. v. Burwell*, 816 F.3d 48, 54 (4th Cir. 2016). While the Medicare Act does set a 90-day deadline for Appeals Council decisions in mandatory language, Congress specifically laid out the consequences of failure to meet that deadline. *See* 42 U.S.C. § 1395ff(d)(3)(B) ("In the case of failure by the [Appeals Council] to render a decision . . . ."). In *Cumberland County Hospital System*, the Fourth Circuit explained the significance of Congress creating a comprehensive regulatory scheme that provides for escalation:

> **[I]nstead of creating a right to go to court to enforce the 90-day deadline, Congress specifically gave the healthcare provider a choice of either waiting for the ALJ hearing beyond the 90-day deadline or continuing within the administrative process by escalation to the next level of review.** The Hospital System's argument focuses on only the provision creating the 90-day time frame and fails to account for its context in the comprehensive administrative process. Our reading of the statute cannot be so restricted. *See King v. Burwell*, ⸺ U.S. ⸺, 135 S.Ct. 2480, 2492, 192 L.Ed.2d 483 (2015) (noting that it is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme" (quoting *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 134 S.Ct. 2427, 2441, 189 L.Ed.2d 372 (2014) (internal quotation marks omitted))); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) (noting that "a reviewing court should not confine itself to examining a particular statutory provision in isolation").

> **Thus, when taken in context, § 1395ff(d) must be understood to provide a 90-day deadline for an ALJ's decision, thereby encouraging the process to proceed expeditiously, and to give the healthcare provider two options if the**

**deadline is not met: bypassing the ALJ hearing and obtaining review by the Departmental Appeals Board, or waiting beyond the 90-day period for the ALJ to conduct a hearing and render a decision.** In giving the healthcare provider these options, Congress anticipated that the 90-day deadline might not be met and provided its chosen remedy.

*Cumberland Cnty. Hosp. Sys.*, 816 F.3d at 55 (emphasis added).

Plaintiff does not cite—nor has the Court located—any binding authority holding that Medicare providers have a clear and undisputable right to a decision by the Appeals Council within 90 days. Under these circumstances, the Court—like other courts in this circuit—finds the Fourth Circuit's reasoning persuasive. *See, e.g.*, *Inland Fam. Prac. Ctr., LLC v. Azar*, No. 2:18-CV-140-KS-MTP, 2021 WL 2583552 (S.D. Miss. June 23, 2021) (denying mandamus relief to a provider requesting an order from the district court compelling the ALJ to render a decision after the 90-day deadline passed, concluding that the escalation procedures constituted another adequate remedy) (citing *Cumberland Cnty. Hosp. Sys.*, 816 F.3d at 54-55); *Superior Home Health Servs., L.L.C. v. Azar*, No. 5:15-CV-00636-RCL, 2018 WL 3717121 (W.D. Tex. Aug. 3, 2018) (dismissing provider's procedural due process claim relating to a delay at the ALJ stage, finding that, because the Medicare Act explicitly spells out the escalation remedies, "Congress anticipated delays yet declined to set for further remedy than that provided in the statute" and "[f]urther remedies beyond the statutory text must come from Congress") (citing *Cumberland Cnty. Hosp. Sys.*, 816 F.3d at 55); *Infinity Healthcare Servs.*, 349 F. Supp. 3d at 602-03 (finding that a provider did not establish that it was statutorily entitled to suspension of recoupment because an ALJ hearing could not be accomplished within 90 days) (citing *Cumberland Cnty. Hosp. Sys.*, 816 F.3d at 54-55). While *Cumberland* dealt with delays at the ALJ stage, its logic still operates here. Congress provided statutory remedies for the failure of both an ALJ and the Appeals Council to render a timely decision in 42 U.S.C. § 1395ff(d)(3), which it notably and unambiguously titled "Consequences of failure to meet deadlines"—that is, escalation. Plaintiff rejected that remedy

with respect to the ALJ. It now rejects that remedy once again by seeking an order of this Court requiring the Appeals Council to adjudicate its request for review, rather than seeking judicial review of the underlying overpayment determination.

Because the Medicare Act specifically provides procedural remedies for providers facing delays in the administrative appeals process, the Court concludes that Plaintiff does not have a "clear right" to a mandamus order here. *Wolcott*, 635 F.3d at 768. Additionally, because there is an available remedy for the failure of the Appeals Council to render a timely decision—escalation to judicial review of the underlying overpayment determination—Plaintiff cannot establish that "no other adequate remedy exists" besides an order of mandamus requiring the agency to provide an Appeals Council decision. *Wolcott*, 635 F.3d at 768. Escalation in accordance with the Medicare Act is "adequate because, despite the undisputed backlog of Medicare appeals, it is 'capable of affording full relief as to the very subject matter in question.'" *Inland Fam. Prac. Ctr.*, 2021 WL 2583552, at *2 (quoting *Wolcott*, 635 F.3d at 768). As such, the Court concludes that allowing Plaintiff to amend its mandamus claim would be futile because Plaintiff cannot establish that it is entitled to mandamus relief.

Moreover, even if Plaintiff could establish that all three elements required for mandamus relief are met, the Court would decline to exercise its discretionary power to issue mandamus relief. *See Wolcott*, 635 F.3d at 768 ("[T]he decision to grant or deny [mandamus relief] remains within the court's discretion because of the extraordinary nature of that remedy."). It is undisputed that Plaintiff has been effected due to the backlog of Medicare appeals. However, granting Plaintiff's requested mandamus relief would only serve to move Plaintiff to the front of the line in the appeals process, and would not serve to ameliorate the underlying quagmire. As the D.C. Circuit, which deals with a heavy docket of administrative law cases, explained:

> **Assuming constant resources for [an administrative agency], a judicial order putting [a plaintiff] at the head of the queue simply moves all others back one space and produces no net gain.** Agency officials not working on [administrative] matters presumably have not just been "twiddl[ing] their thumbs". *See Board of Trade v. SEC*, 883 F.2d 525, 531 (7th Cir.1989). Perhaps Congress should earmark more funds specifically to the [agency], . . . but that is a problem for the political branches to work out.
>
> . . . .
>
> In short, we have no basis for reordering agency priorities. **The agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way. Such budget flexibility as Congress has allowed the agency is not for us to hijack.**

*In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991) (emphasis added) (declining to grant mandamus relief to a drug company complaining that the FDA failed to approve or deny its generic drug within the time required by statute); *see also Ebanks v. Shulkin*, 877 F.3d 1037, 1039–40 (Fed. Cir. 2017) ("[W]e question the appropriateness of granting individual relief to veterans who claim unreasonable delays in VA's first-come-first-served queue. Granting a mandamus petition in such circumstances may result in no more than line-jumping without resolving the underlying problem of overall delay.") (citing *In re Barr*, 930 F.2d at 75). *Jaraba v. Blinken*, 568 F. Supp. 3d 720, 738 (W.D. Tex. 2021) ("[C]ourts have refused to issue judicial orders that would just put the litigants 'at the head of the queue ... and produce[ ] no net gain.'") (quoting *In re Barr*, 930 F.2d at 75). While the Court sympathizes with Plaintiff's plight, it declines to direct HHS and CMS how they should allocate their scarce financial resources. "[T]he political branches are best-suited to alleviate [the Medicare appeals process's] crippling delays," and "Article III's treatment of the ailing Article II patient in the manner Med-Cert urges" is neither "possible [nor] desirable." *Cumberland Cnty. Hosp. Sys.*, 816 F.3d at 56-57.

The Court concludes that, even if Plaintiff were allowed to amend its mandamus claim, Plaintiff would be unable to satisfy two of the three necessary elements for mandamus relief.

Moreover, even if Plaintiff could satisfy all three elements, the Court would decline to exercise its discretionary power to grant mandamus relief because the allocation of scarce administrative resources is a task best left to the political branches. *See Cumberland Cnty. Hosp. Sys.*, 816 F.3d at 56-57. Accordingly, the Court denies Plaintiff's constructive request to amend its mandamus claim because any such amendment would be futile.

### 4.   *Plaintiff's Remaining Claims for Relief are Dismissed*

Plaintiff's alternative claims for relief, as pleaded in the Complaint, are now moot because Plaintiff received the ALJ hearing it requested in its Complaint. *See Super Tire*, 416 U.S. at 122. Additionally, the Court denies Plaintiff's constructive request for leave to amend its pleadings to recast the gravamen of its factual allegations and assert claims for declaratory judgment because such amendment—as put forth in the Motion for Summary Judgment and Brief in Support—would be futile. Under these circumstances, there is no live controversy before the Court. *Payne v. Progressive Fin. Servs., Inc.*, 748 F.3d 605, 607 (5th Cir. 2014) ("A live controversy must exist at every stage of the litigation."). As such, the Court Plaintiff's alternative claims for relief are dismissed as moot. *See Powell*, 395 U.S. at 499 ("[W]here one claim has become moot and the pleadings are insufficient to determine whether the plaintiff is entitled to another remedy, the action should be dismissed as moot."); *Goldin v. Bartholow*, 166 F.3d 710, 717 (5th Cir. 1999) ("A moot case presents no Aritcle III case or controversy, and a court has no constitutional jurisdiction to resolve the issue it presents.").

### B.   Alternatively, Defendant is Entitled to Summary Judgment on Plaintiff's Remaining Alternative Claims for Relief

Alternatively—assuming *arguendo* the Court were to allow Plaintiff to amend its claims to refocus them on the fourth-level delay and the appeals system writ large—the Court would reach the same result(s): a denial of Plaintiff's Motion for Summary Judgment and a grant of Defendants'

---

Cross-Motion for Summary Judgment. For the same reasons Plaintiff's constructive amendments are futile, the Court concludes that Defendant is entitled to summary judgment on all of Plaintiff's remaining alternative claims for relief. *See* FED. R. CIV. P. 56(a) (The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law.").

With respect to the *ultra vires* claim, Defendant is entitled to summary judgment because Defendants have established that they did not violate the Medicare Act by failing to provide Plaintiff with an Appeals Council decision within 90 days of Plaintiff's request for review. *See supra* III.A.3(i)(a); *Sahara*, 975 F.3d at 533-34. Second, Defendants are entitled to summary judgment on Plaintiff's APA claim because the Court lacks subject-matter jurisdiction over that claim. *See supra* III.A.3(i)(b). Third, Defendants are entitled to summary judgment on Plaintiff's claim for mandamus relief because: (1) Plaintiff has not established that (a) they had a "clear right" to receive a decision from the Appeals Council within 90 days of their request for review or (b) "no other adequate remedy exists," *Wolcott*, 635 F.3d at 768; and, even if Plaintiff had so established, (2) the Court would decline to exercise its discretionary power to grant mandamus relief. *See supra* III.A.3(ii). Accordingly, the Court concludes that there are no genuine disputes of material fact and Defendants are entitled to summary judgment as a matter of law. *See* FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322.

## IV.   CONCLUSION

For the foregoing reasons, the Court (1) **DENIES** Plaintiff's Motion for Summary Judgment and (2) **GRANTS** Defendants' Cross-Motion for Summary Judgment. Plaintiff's *ultra vires* claim and mandamus claim are hereby **dismissed with prejudice**. Plaintiff's APA claim is hereby **dismissed without prejudice**.

**SO ORDERED:** September 21, 2023.

Ada E. Brown
UNITED STATES DISTRICT JUDGE